**Affirmed and Opinion filed April 14, 2015.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-13-01102-CR**
**NO. 14-13-01103-CR**
**NO. 14-13-01104-CR**

---

**LEMARCUS ASHONTAY CHRISTMAS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 434th Judicial District Court**
**Fort Bend County, Texas**
**Trial Court Cause Nos. 12-DCR-059643; 12-DCR-059644; and**
**12-DCR-059645A**

---

## O P I N I O N

A jury convicted appellant Lemarcus Ashontay Christmas of obstruction or retaliation (trial court cause number 12-DCR-059643, appeal number 14-13-01102-CR); violation of conditions of bond (trial court cause number 12-DCR-059644, appeal number 14-13-01103-CR), and tampering with a witness (trial court cause number 12-DCR-059645A, appeal number 14-13-01104-CR). In each

case, the trial court sentenced appellant to confinement for 30 years in the Institutional Division of the Texas Department of Criminal Justice and ordered the sentences to run concurrently. Appellant challenges all of these convictions in this appeal. We affirm.

## BACKGROUND

J.G.[1] alleged that appellant, her boyfriend, assaulted her with a deadly weapon. The police did not apprehend appellant at the time. A few months later, officers responded to a call for service at J.G.'s home. J.G. complained of harassment. The police located appellant two blocks from J.G.'s house and arrested him based on the outstanding warrant for aggravated assault. J.G. posted bond so that appellant could be released from jail.

Several months after this incident, appellant began communicating with J.G. in a threatening manner and she obtained a protective order. Along with the original aggravated assault charge, appellant was charged with obstruction or retaliation, tampering with a witness, and violating a condition of his bond. The jury found appellant not guilty of aggravated assault but found him guilty of the remaining charges.

Appellant raises two issues on appeal. First, he contends the convictions for both obstruction or retaliation and tampering with a witness are barred by double jeopardy. Second, appellant asserts that his conviction for violation of a bond condition is not supported by the evidence. For reasons explained below, we overrule both issues.

---

[1] Throughout this opinion we refer to the complainant by her initials.

## THE EVIDENCE

On September 4, 2011, Officer Christopher Vargas responded to a call at J.G.'s home. Vargas knew there was an outstanding warrant for appellant's arrest for aggravated assault. J.G. was alone with her children and fearful. After speaking with J.G., Vargas, along with Officers Irving and Louis, checked the backyard. Appellant was harassing J.G. by turning off the breaker box and yelling at her. While the officers were looking for appellant, J.G. informed them appellant was texting her and said that he could see them. The officers began checking different vehicles and driveways to determine appellant's location. Officer Louis located appellant approximately two blocks from J.G.'s residence. Vargas testified that appellant was trying to walk away from the officers and was not cooperative. Vargas testified appellant is about 6'3" or 6'4" and weighs 200 pounds or more. Vargas pepper-sprayed appellant and ultimately arrested him. Vargas called emergency services to decontaminate appellant from the pepper spray. Appellant was taken to the hospital because he complained that he was having trouble breathing and said he was high on speed. Appellant's demeanor was consistent with being under the influence and, according to the officer, he was "intoxicated with something." Vargas testified that appellant asked him if they found his gun in the backyard. Vargas notified his sergeant and another officer at the location to check the backyard for a gun but the officers did not find any gun.

J.G. testified that on this occasion, appellant called her about "100 times." Appellant said that he was going to cut the wires at the house, and she called the police. After appellant was arrested, J.G. bonded him out. She testified that the papers stated appellant was not to have any contact with her as a condition of the bond. J.G. was sure that appellant understood that he was to have no contact with her. She testified that she continued to have contact with appellant and signed an

affidavit of non-prosecution regarding the aggravated assault and the incident on September 4, 2011. J.G. said she and appellant were not living together but stated that they continued to co-parent and talk.

According to J.G., on January 28, 2012, appellant called her phone "100 times." He followed her to a club and said he was going to cut all four of her tires and that when she left, he was going to "jump on her." J.G. had the police in the club escort her to her car, and she went home. That night, J.G. was upstairs and heard the alarm signal that a door had opened. She looked over the balcony and saw that appellant was inside the house. J.G. called 911, and appellant ran out. J.G. testified that appellant did not have a key. Appellant continued to call her and threaten her. Appellant said when J.G. backed her car out of the garage, he would bust her window, and if she came out the door, he was going to stab her. Photographs of text messages, many threatening, that appellant sent to J.G. were admitted into evidence. J.G. identified the messages as coming from appellant and read them aloud:

> "You better talk to God. I already did this. I already did it on my heart."
>
> "You need to get right with God. I prayed, and I'm ready to go over to the next world."
>
> "You got to pay for what you did. You always think it's okay, and then you play with me with laws[2] trying to make everybody feel sorry for you. I wouldn't care if you was dead."
>
> "It's probably better that way so you can't . . . over nobody else. You are an evil (pause) you need to ask God to forgive you and get right."
>
> "I see the laws sitting down the street right behind that white car."
>
> "I'm about to call everybody phone see if they got your burial

---

[2] J.G. testified "laws" referred to the police.

4

money."[3]

"B your better watch I'm right on you're A."

"I guess you don't see me."

"I'm about to go get [John]."[4]

"I'm right behind you."

"At the day care."

"I'm on you now B."

"I'm on you now. Look behind you B."

"You don't know what I'm riding in, but I got you."

J.G. testified that appellant also called her at work and told her that their son John was choking and that he was taking the boy to the hospital. It was not true.

Three days later, J.G. sought a protective order. Appellant followed her in a car to the courthouse. Appellant continued to call her and when she answered some of the calls, he threatened that he was going to do something to her. J.G. testified that sometimes she was in fear of him hurting her. J.G. left the courthouse, went to the Missouri City Police Department, and spoke to several officers.

Less than a week later, the police came to J.G.'s house and moved her to a safe location. During that time, she received more text messages from appellant:

"Nobody ain't safe."

"Look outside I'm standing."

"Come meet me."

"Ima put the gun up for now."

"I put the gun up. Is you going to come now?"

---

[3] J.G. testified appellant "was referring that he was going to do something to me."

[4] In this opinion, we use the pseudonym "John" for J.G.'s and appellant's son. John was at daycare.

"Just come. It ain't far. I'm right around the corner."

"Come by yourself."

"If the laws come, it's off."


J.G. testified that she received a letter from appellant, which she read aloud:

> Shit, but so much has been said or done to where this shit has to be cleaned up, and I need your help. I don't know where to start, but it has to start somewhere. The way this work is that I have a victim in my case; but since it's you, my case can be dismissed. They are trying to get in contact with you.
>
> First of all, they think we fell out because you had changes on me and that the reason why -- oh, he's saying charges. You had charges on me, and there's a reason why so many charges have been filed. As far as everything else about phone conversations is nothing but a misdemeanor for the threats I made.
>
> All you have to do is say you -- misdemeanor for the threats I made. All you have to do is say you not going to testify against me. I'll explain to your dad, but he probably know what to say. The DA going to ask you about if you okay with the time that he offering me and once you hear, all you have to say is –


## DOUBLE-JEOPARDY CLAIM

In his first issue, appellant claims his convictions for obstruction or retaliation[5] and tampering with a witness[6] are barred by the prohibition against double jeopardy because these two offenses arose out of the same conduct and the complaining witness in each case is the same person. Appellant did not assert his double-jeopardy claim in the trial court and the State argues that appellant has failed to preserve the complaint for appellate review. A double-jeopardy violation may be raised for the first time on appeal  when the undisputed facts show that the

---

[5] Tex. Pen. Code Ann. § 36.06(a) (West 2011).

[6] Tex. Pen. Code Ann. § 36.05(a)(1) (West Supp. 2014).

6

violation is clearly apparent from the face of the record and when enforcement of the usual rules of procedural default serves no legitimate state interest. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000). *See also Bigon v. State,* 252 S.W.3d 360, 369 (Tex. Crim. App. 2008). We first determine whether the undisputed facts show that the violation is clearly apparent from the face of the record. *See Garfias v. State*, 424 S.W.3d 54, 58 (Tex. Crim. App. 2014).

There are three types of double-jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *See id.* When, as in this case, a defendant is convicted of two or more crimes in a single trial, only the third type of double-jeopardy violation may occur. *See Ex Parte Herron*, 790 S.W.2d 623, 624 (Tex. Crim. App. 1990). "A multiple-punishments double-jeopardy violation may arise either in the context of lesser-included offenses (when the same conduct is punished under both a greater and a lesser-included statutory offense) or when the same criminal act is punished under two distinct statutory provisions, but the legislature intended only one punishment." *Aekins v. State*, 447 S.W.3d 270, 274 (Tex. Crim. App. 2014); *Garfias*, 424 S.W.3d at 58.

The Legislature has the power to establish and define crimes and few, if any, limitations are imposed upon this power by the Double Jeopardy Clause. *Garfias*, 424 S.W.3d at 58. Thus the true inquiry in a multiple-punishments case is whether the Legislature intended to authorize the separate punishments. *See id*. There are two ways in which legislative intent can be ascertained: by analyzing the elements of the offenses in question, or by identifying the appropriate "unit of prosecution" for the offenses. *See id.* The Court of Criminal Appeals has held that an "elements" analysis is appropriate when the offenses in question come from different statutory sections, while a "units" analysis is employed when the offenses are alternative

means of committing the same statutory offense. *See id.* In this case, appellant complains of convictions stemming from different statutory sections, so we must embark on an "elements" analysis to determine whether multiple-punishments principles have been violated. *See id.*

The starting point of an "elements" analysis in the multiple-punishments context is the *Blockburger* test, used to determine whether each of the offenses requires proof of an element that the other does not. *See id.* In making this determination, courts must focus on the elements alleged in the charging instrument—not on the offense as defined in the Penal Code. *See id.* Under this so-called cognate-pleadings approach, double-jeopardy challenges can be made even against offenses that have different statutory elements if the same facts required to convict are alleged in the indictment. *See id.* at 58–59.

But, the *Blockburger* test is only a starting point—it is a rule of statutory construction, not the exclusive indicator of a double-jeopardy violation. *See id.* at 59. The *Blockburger* test cannot allow two punishments for a single course of conduct when the Legislature intended to authorize only one. *See id.* To facilitate this analysis, in *Ervin v. State*, 991 S.W.2d 804 (Tex. (Tex. Crim. App. App. 1999), the Court of Criminal Appeals set forth a list of non-exclusive factors designed to help courts in the absence of clear guidance from the Legislature:

> whether offenses are in the same statutory section; whether the offenses are phrased in the alternative; whether the offenses are named similarly; whether the offenses have common punishment ranges; whether the offenses have a common focus; whether the common focus tends to indicate a single instance of conduct; whether the elements that differ between the two offenses can be considered the same under an imputed theory of liability that would result in the offenses being considered the same under *Blockburger;* and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double-jeopardy purposes.

*Garfias,* 424 S.W.3d at 59 (quoting *Bigon v. State*, 252 S.W.3d 360, 370 (Tex. Crim. App. 2008)). The Court of Criminal Appeals has indicated that the "focus" or "gravamen" of a penal provision should be regarded as the best indicator of legislative intent when determining whether a multiple-punishments violation has occurred. *Id*.

One other factor reviewing courts should consider when making an "elements" analysis is the determination of the allowable unit of prosecution for the offenses in question. *Id*. Although such a determination is a necessary step when a multiple-punishments claim deals with two offenses from the same statutory section, even in an "elements" analysis, such a determination can be indicative of legislative intent. *Id*.

We start with the *Blockburger* test. *See id*. at 58. As charged in this case, the offense of obstruction or retaliation required proof that appellant intentionally or knowingly threatened to harm the complainant by an unlawful act, assault or murder, in retaliation for or on account of her status as a witness or a prospective witness. The offense of tampering with a witness required proof that appellant, with intent to coerce the complainant, a witness or prospective witness in an aggravated assault case, coerced or induced the complainant to abstain from, discontinue or delay appellant's prosecution or testify falsely. The offense of obstruction required proof that appellant threatened the complainant with assault or murder. The offense of tampering with a witness did not require such proof. The *Blockburger* test reveals that each offense, as charged in the respective indictment, contains an element that the other does not. *See id*. at 58–60.

But as this does not end the analysis of whether the Legislature intended for appellant's conduct to be punished multiply, we now consider that question

9

through the lens of the *Ervin* factors outlined above. *See id*. at 60; *Villanueva v. State*, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007).

These two offenses are in different statutory sections and bear different names, but have common punishment ranges. Obstruction or retaliation is a result-oriented offense. *See Herrera v. State*, 915 S.W.2d 94, 98 (Tex. App.—San Antonio 1996, no pet.). The gravamen of the offense is the intent to harm and prevent or delay another as a public servant. *Id.* The nature of the actor's conduct is inconsequential to the commission of the crime. *See Cook v. State,* 884 S.W.2d 485, 489 (Tex. Crim. App. 1994).

The offense of tampering with a witness is a conduct-oriented offense. A person commits the offense if he engages in specified conduct with intent to influence the witness. "When a specific act is criminalized because of its very nature, a culpable mental state applies to committing the act itself and, thus the offense is nature or conduct oriented." *Gonzales v. State*, 270 S.W.3d 282, 288 (Tex. App.—Amarillo 2008, pet. ref'd). The gravamen of the offense is the conduct of influencing or coercing a witness. Thus, the two offenses do not have a common focus that tends to indicate a single instance of conduct.

A determination of the allowable unit of prosecution for the two offenses, which, as noted above, can be indicative of legislative intent in an "elements" analysis, also indicates that the Legislature intended to allow multiple punishments in this case. *See Garfias*, 424 S.W.3d at 61; *Bigon*, 252 S.W.3d at 371. No express statement defining the allowable unit of prosecution is provided by the Legislature; thus the gravamen of the offenses best describes the allowable unit of prosecution. *Garfias,* 424 S.W.3d at 61. As indicated above, the focus of the two offenses differs and therefore the allowable units of prosecution for the two offenses are not the same. *See id*.

The *Blockburger* test, the *Ervin* factors, and a determination of the allowable unit of prosecution indicate that the Legislature intended to allow multiple punishments. As a result, a double-jeopardy violation is not clearly apparent from the face of this record. *See Garfias*, 424 S.W.3d at 58–64; *Gonzalez*, 8 S.W.3d at 643. Appellant has not sustained his burden of presenting a record showing on its face a multiple punishments violation. *See Garfias*, 424 S.W.3d at 58–64; *Gonzalez*, 8 S.W.3d at 643. Accordingly, we overrule appellant's first issue.

## INSUFFICIENT-EVIDENCE CLAIM

In his second issue appellant contends the evidence is insufficient to support his conviction under section 25.07 of the Texas Penal Code for violation of a bond condition because the bond condition failed to meet the statutory requirements of article 17.292 of the Texas Code of Criminal Procedure. *See* Tex. Penal Code Ann. § 25.07 (West, Westlaw through 2013 3d C.S.), and Tex. Crim. Proc. Code Ann. art. 17.292 (West, Westlaw through 2013 3d C.S.). Appellant argues there was no valid order and, alternatively, he did not receive a copy of the order in accordance with article 17.292.[7]

Appellant was charged with and convicted of violating the conditions of bond set in trial court cause number 11-DCR-057993 — aggravated assault with a deadly weapon.[8] Section 25.07(a) provides, in pertinent part:

> (a) A person commits an offense if, in violation of a condition of bond set in a family violence, sexual assault or abuse, or stalking case and related to the safety of a victim or the safety of the community, an

---

[7] Appellant does not contend that he did not violate the bond condition that he have no contact with the complainant or that the evidence was insufficient to establish the violation.

[8] The charge to the jury provided appellant "stands charged by indictment with the offense of violation of a bond condition. . ." and the guilty verdict states, "We, the jury, find the defendant Lamarcus Ashontay Christmas GUILTY of Violation of a Bond Condition, as charged in the indictment.

order issued under Article 17.292, Code of Criminal Procedure, an order issued under Section 6.504, Family Code, Chapter 83, Family Code, if the temporary ex parte order has been served on the person, or Chapter 85, Family Code, or an order issued by another jurisdiction as provided by Chapter 88, Family Code, . . .

Tex. Penal Code Ann. § 25.07(a).

Appellant cites no authority that supports his contention that a conviction for this offense must be based on the violation of an order issued under article 17.292. Under the unambiguous language of Penal Code section 25.07(a), a conviction may be based on a violation of a condition of bond that does not satisfy the requirements of article 17.292. *See* § 25.07(a). Appellant's reliance upon *Harvey v. State*, 78 S.W.3d 368 (Tex. Crim. App. 2002), is misplaced as that case concerned the offense of violation of a protective order, not a bond condition. The version of section 25.07 in effect when *Harvey* was decided did not include violation of a condition of bond as an offense. *Id.* at 368 n. 1. Accordingly, we reject appellant's argument that the evidence is insufficient to support his conviction on the grounds the bond condition failed to meet the statutory requirements of article 17.292.

Appellant also contends that the evidence did not establish beyond a reasonable doubt that he knew of the bond condition. The record reflects appellant signed the bail order containing the following language "* Bond condition – no contact with [J.G.]." Judge Sears testified the bond condition was in his handwriting and that in each case the defendant receives a copy of the bond. Judge Sears stated he "would tell him, A [sic] condition of your bond is that you shall have no contact with [J.G.] in this case." Further, J.G. testified that she was sure appellant understood that he was not to have any contact with her as a condition of his bond. We conclude that a rational juror could have found beyond a reasonable doubt that appellant knew a condition of his bond was to have no contact with the complainant. For these reasons, we overrule appellant's second issue.

12

The judgment of the trial court is affirmed.


                                               /s/     Kem Thompson Frost
                                                       Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and McCally.
Publish — Tex. R. App. P. 47.2(b).