OPINION
AL SCOGGINS, Justice
In four issues, appellant, Terry Ben Brock, challenges his conviction for the offense of retaliation against a public servant. See Tex. Penal Code Ann. § 36.06 (West 2011). Specifically, Brock contends that: (1) the evidence supporting his conviction is insufficient; (2) the trial court erred in failing to grant his motion to quash the indictment; (3) the trial court erred in instructing the jury to find him guilty on an element of the offense; and (4) the trial court erred in admitting extraneous-offense evidence. Because we reject all of Brock’s issues on appeal, we affirm.
I. Background
The incident in question transpired when Brock appeared before Coryell County Court at Law Judge John Lee after being charged with driving while intoxicated. Judge Lee testified that he denied Brock a personal-recognizance bond and that the denial upset Brock greatly. Judge Lee recalled that Brock was disruptive when the DWI case was being tried before a jury. Brock glared at Judge Lee during the trial, and Judge Lee described Brock’s demeanor as follows: “His body posture ... shaking his head ... mumbling under his breath. From the very start, he was out to disrupt the process.” Brock continued his disruptive behavior until Judge Lee directly admonished him. Judge Lee testified to the following: “It had been going on for hours, I had had plenty of his childish behavior. I told him, ‘You’re getting on my last nerve. I don’t want to see you sitting there shaking your head anymore.’ ” Judge Lee told Brock to sit up so that they could finish the trial. In response to Judge Lee’s admonishments, Brock gave a “mean look” and said, “Oh, I’ve got something for you, just wait.” Based on his glare, demeanor, and posture, Judge Lee interpreted Brock’s statement as “not a friendly — a friendly statement at all. I perceived it to be a threat.”
Judge Lee later testified that:
Well, it took me aback for a couple of seconds because I had to kind of process what I thought I had just heard. You know, it’s — it took me just a second to really think through, and I said, “Whoa, whoa, whoa. Stop. Just wait a minute.” So — because everybody — the attorneys were still talking and kind of — I think it was a little bit chaotic there. So I stopped him and I said, “Say again what you just said.”
Brock then responded that he had testimony to show the judge. However, Brock’s *5 attempt to qualify his earlier statement did not change Judge Lee’s belief that the original statement was a threat.
Subsequently, the State rested its case in the other matter. When the defense called Brock to testify, Judge Lee attempted to swear in Brock. Judge Lee remembered the interaction as follows:
Well, the jury was in the box, just as these folks are now, and I had him stand and swore him, and I asked him, “Do you swear to tell the truth, the whole truth, and nothing but the truth,” and he said, “I find that” — or, “That’s a hypocritical question coming from you,” or “coming from this Court” or — “coming from this place,” I think he might have said. “That’s a hypocritical question coming from this place.”
[[Image here]]
I just said, “Mr. Brock, I’m going to ask you one more time. You want to testify. We’re trying to get you to testify. So do you swear to tell the truth?” And he still had his hand up, and he said, “You won’t let me tell the truth.”
Judge Lee excused the jury from the courtroom and spoke with Brock and the attorneys for the parties. At this time, Brock’s attornéy moved for a mistrial, which was granted.
In the instant case, Brock was charged by indictment with the offense of retaliátion against Coryell County Court at Law Judge John Lee, a public servant. See id. The case was tried in the 52nd District Court of Coryell County, Texas. In addition to Judge Lee’s testimony, Amberly Mathews of the Coryell County Sheriffs Department testified that she escorted Brock from the vehicle to the courthouse on the day in question. When he exited the vehicle, Brock told Deputy Mathews that “[h]e may get mouthy, but he wasn’t going to fight me.” Later, Jason Bobo of the Texas Rangers testified that Brock stated the following:
There’s several things. You know, the things I remember off the top of my head are his — his intent on the 21st in Judge Lee’s courtroom was to cause embarrassment, to delay the trial, to cost the taxpayers as much money as possible, and to — that’s really the gist of it.
Ranger Bobo also noted that:
Part of it was, I think he [Brock] had written — he told me he had written his family saying don’t come to the trial, why they couldn’t be in the courtroom. He talked about wanting to cause a mistrial, he thought maybe he would be charged with a misdemeanor or things along those lines.
At the conclusion of the evidence, the jury found Brock guilty of the charged offense. The trial'court assessed punishment at fifty years in the Institutional Division of the Texas Department of Criminal Justice. The trial court also certified Brock’s right of appeal, and this appeal followed.
II. Brock’s Motion to Quash the Indictment
In his second issue, Brock contends that the indictment in this case is duplicitous. Specifically, Brock asserts that the indictment improperly presented two separate crimes — retaliation and obstruction — in a single paragraph. And because the indictment is duplicitous, the jury could have found Brock guilty on a count without having to reach a unanimous verdict on the commission of any particular offense.
A. Standard of Review
In Smith v. State, the Court of Criminal Appeals articulated the standard of review for a motion to quash an' indictment as follows:
*6 The sufficiency of an' indictment is a question of law and is reviewed de novo. State v. Moff, 154 S.W.3d 599, 601 (Tex. Crim.App.2004) (citing Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App.1997)). The right to notice is set forth in both the United States and Texas Constitutions. See U.S. Const, amend. VI; Tex. Const, art. 1, § 10. In addition, the Texas Code of Criminal Procedure provides guidelines relating to the sufficiency of an indictment. See, e.g,, Articles 21.03, 21.04, and 21.11. Thus, the indictment must be specific enough to inform the defendant of the nature of the accusations against him so that he may prepare a defense. Moff 154 S.W.3d at 601. However, the due-proeess requirement may be. satisfied by means other than the language in the charging instrument. Kellar v. State, 108 S.W.3d 311, 313 (Tex. Crim.App.2003). When a .motion to quash is overruled, a defendant suffers no harm unless, he did not, in fact, receive notice of the State’s theory against which he would have to defend. Id.; see also Art. 21.19 (“An indictment shall not be held insufficient, nor.shall the trial, judgment or other proceedings thereon be affected, by reason of any defect of form which does not prejudice the substantial rights of the defendant.”).
297 S.W.3d 260, 267 (Tex.Crim.App.2009).
B. The Indictment
The State may charge multiple offenses in a single indictment. See Tex. Code Crim. Proo. Ann, art. 21.24(a) (West 2009). However, “no paragraph may charge more than one offense.” Id. art. 21.24(b). “A ‘count’ is used to charge an offense and a ‘paragraph’ is a portion or subset of a count charging a method of committing that offense.” Riley v. State, 658 S.W.2d 818, 819 (Tex.App. — Fort Worth 1983, no pet.); see Callins v. State, 780 S.W.2d 176, 183 n. 12 (Tex.Crim.App. 1986). “But since .each ‘count’ alleges a single offense, an indictment cannot authorize more convictions than there are counts.” Martinez v. State, 225 S.W.3d 550, 554 (Tex.Crim.App.2007) (“Permitting more convictions than authorized by the indictment implicates a defendant’s due-process right to notice.”).
■ That said, an indictment may allege different methods of committing the same’ offense. See Martin v. State, 95 Tex.Crim. 401, 402-03, 254 S.W. 971 (Tex. Crim.App.1923); Renfro v. State, 827 S.W.2d 532, 535 (Tex.App. — Houston [1st Dist.] 1992, pet. ref'd); see also Phillip v. State, No. 14-94-00370-CR, 1998 WL 148098, at *3, 1998 Tex.App. LEXIS 1984, at *8 (Tex.App. — Houston [14th Dist.] Apr. 2, 1998, no pet.) (not designated for publication). Furthermore, alternate pleadings of different methods of committing an offense may be charged in a single indictment. See Kitchens v. State, 823 S.W.2d 256, 258 (Tex.Crim.App.1991).
“Duplicity” is the technical fault of uniting two or more distinct and separate offenses in the same count of an indictment. See Tex.Code Crim. Proc. Ann. art. 21.24(b); see also Skillern v. State, 890 S.W.2d 849, 872 (Tex.App. — Austin 1994, pet. ref'd); Gahl v. State, 721 S.W.2d 888, 895 (Tex.App. — Dallas 1986, pet. ref'd). The rule against duplicitous indictments is based on the proposition that a defendant must receive fair notice of the charge against which he must defend. Galvan v. State, 699 S.W.2d 663, 666 (Tex.App.— Austin 1985, pet. ref'd).
C. Discussion
Here, Brock was charged with committing an offense under section 36.06 of the Penal Code. More specifically, the indictment alleged that:
*7 Terry Ben Brock, hereinafter styled Defendant, on or about the 21st day of October 2013, and' before the presentment of this indictment, in the County and State aforesaid, did-then, and there intentionally or knowingly threaten-to harm another, to-wit: Judge John Lee, by an unlawful act, to-wit: stating, in a threatening tone of voice and demeanor “I got something for you just waiting,” in retaliation for, on account of, or to prevent or delay the service of John Lee as a public servant, to- wit: Judge of the County Court at Law of Coryell County.
"Section 36.06, which is entitled, “Obstruction or Retaliation,” provides the following, in relevant párt:
[Sec. 36.06]
(a) A person commits an offense if he intentionally ,or knowingly harms, or threatens to harm another by an unlawful act:
(1) in retaliation for or on account of the service or status of another as ■ a:
(A) public servant, witness, prospective witness, or informant; or
(B) person who has reported or who the actor knows intends to report the occurrence of a crime; or
(2) to prevent or delay the service of another as a:
(A) public servant," witness, prospective witness, or informant; or
(B) person who has reported or who the actor knows intends to report the occurrence of a crime.
Tex. Penal Code ANN. § 36.06(a).
On appeal, Brock argues that the trial court erred in denying his motion to quash the indictment because subsections (a)(1) and (a)(2) of section 36.06 of the Penal Code constitute two separate and distinct offenses, and because the indictment alleges in one count that he violated both of the subsections. We disagree.
Central to our analysis is whether subsections (a)(1) and (a)(2) of section 36.06 of the Penal Code constitute two separate and distinct offenses. In support of his argument that they do, Brock relies on the Lindsey decision from the Thirteenth Court of Appeals. See generally Lindsey v, State, No. 13-09-00181-CR, 2011 WL 2739454, 2011 Tex.App. LEXIS 5388 (Tex. App. — Corpus Christi July 14, 2011; no pet.) (mem. op.-, not designated for publication). In affirming a retaliation conviction, the Lindsey Court stated that:
Second, we note that a close examination of the statute supports the conclusion that' retaliation does not require a showing of intent to inhibit the behavior of the target of the threat. Section 36.06(a) of the penal code defines two crimes: retaliation and obstruction. See Tex. Penal Code Ann. § 36.06(a)(1), (2). Both crimes require a showing that the defendant “intentionally or knowingly harm[ed] or threatened] to harm another by an unlawful act.” Id. Obstruction, described in subsection (a)(2), additionally requires a showing that the defendant intended “to prevent or delay the service of another” as a public servant, witness, informant, or reporter of a crime. Id. § 36.06(a)(2). Retaliation, on the other hand, contains no such element. See id. § 36.06(a)(1). Instead, the retaliation statute merely requires a showing that the defendant acted “in retaliation for or on account of the service or status of another” as a public servant, witness, informant, or reporter of a crime. Id. The Legislature, could have easily included, an “intent to inhibit” element in the definition *8 of retaliation — as it did in the definition of obstruction — but it chose not to, and it is not our province to add that element. See Tex. Gov’t Code Ann. § 312.005 (requiring us to give effect to the Legislature’s intent as expressed in the statute’s language).
Id.at *4, at **12-13 (Emphasis added).
 For a number of reasons, we are not persuaded by Brock’s reliance on the Lindsey decision. First, we state the obvious: an unpublished opinion from a sister court does not have precedential value and is not binding on this Court. Furthermore, we believe that the analysis in Lindsey is incomplete with respect to construing section 36.06 of the Penal Code. It appears that, in analyzing section 36.06, the Lindsey Court engaged in a Blockburger analysis, which is an “elements” analysis that is “used to determine whether each of the offenses requires proof of an element that the other does not.”[1] Garfias v. State, 424 S.W.3d 54, 58-59 (Tex. Crim.App.2014) (citing Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); Bigon v. State, 252 S.W.3d 360, 369 (Tex.Crim.App.2008)). However, the Court of Criminal Appeals has stated that “the Bloekburger test is only a starting point” for construing a statute. Id. at 59. More specifically,
The Bloekburger test is a useful tool for ascertaining legislative intent, but it is not the only tool. Other (nonexclusive) considerations relevant to determining whether the Legislature intended multiple punishments are: whether the offenses provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the “gravamen” of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, whether the elements that differ between the offenses can be considered the “same” under an imputed theory of liability which would result in the offenses being considered the same under Bloekburger (i.e. a liberalized Block-burger standard utilizing imputed elements), and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different ....
Ervin v. State, 991 S.W.2d 804, 814 (Tex. Crim.App.1999).
More recently, we have signaled that the “focus” or “gravamen” of a penal provision should be regarded as the “best” indicator when it comes to determining whether the Legislature intended to define more than one offense. The question in Huffman v. State, was whether
*9 the Legislature intended to create more than one offense for jury-unanimity purposes. Observing that double jeopardy and jury-unanimity issues constitute “closely intertwined strands of our jurisprudence!],]” we surveyed a number of our previous decisions from both strands, including Vick, and concluded:
The common thread in all of these cases seems to be “focus.” We use grammar and we look to other factors bearing on whether[1] different legal theories constitute the <same’ offense or ‘different’ offenses, but those tools seem useful mainly as an aid to determining focus. The focus or ‘gravamen’ of the offense seems to be one of the best indicators of the allowable unit of prosecution prescribed by the legislature. If the focus of the offense is the result — that is, the offense is a ‘result of conduct’ crime — then'different types of results are considered to be separate offensés, but different types of conduct are not. On the other hand, if the fochs of the offense is the conduct — that is, the offense is a ‘nature of conduct’ crime — then different types of conduct are considered to be different offenses.
Gonzales v. State, 304 S.W.3d 838, 848 (Tex.Crim.App.2010) (quoting Huffman v. State, 267 S.W.3d 902, 907 (Tex.Crim.App. 2008)).
Like Lindsey, this case requires us to construe section 36.06. Our primary objective when construing a statute is to give effect to the Legislature’s intent as expressed in the statute’s language. See Tex. Gov’t Code Ann. § 312.005 (West 2013); see also First Am. Title Ins. Co. v. Combs, 258 S.W.3d 627, 631-32 (Tex.2008). When statutory language is clear and unambiguous, we apply the language of the statute in its plain and common meaning. See City of Rockwall v. Hughes, 246 S.W.3d 621, 625-26 (Tex.2008). However, as expressed in Ervin, Gonzales, and other precedent from the Court of Criminal Appeals, the Bloclcburger test is merely a starting point.. See Garfias, 424 S.W.3d at 58-59; Gonzales, 304 S.W.3d at 848; Huffman, 267 S.W.3d 902, 907; Ervin, 991 S.W.2d at 814. We must examine other factors, which are enumerated above, when construing section 36.06.
We first note that subsections (a)(1) and (a)(2) are both contained within the same section — section 36.06 of the Penal Code — rather than in different statutory sections., This is important because the Court of Criminal Appeals has noted in Garfias that the “elements” analysis is appropriate when the offenses in question come from different statutory sections, which is not.the .case here. See Garfias, 424 S.W.3d at 58 (noting .that an “elements” analysis.is appropriate when, the offenses in question come from different statutory sections, while a “units”, analysis is employed when the .offenses are alternative means of committing the same statutory offense). Further, as noted in Ervin, this is a factor that is considered in ascertaining legislative intent. See 991. S.W.2d at 814.
In addition, we believe that a plain reading of section 36.06 yields a conclusion that subsections (a)(1) and (a)(2) are merely alternative means of “intentionally or knowingly harm[ing] or threatening] to harm another by an unlawful act .... ” Tex. Penal Code Ann. § 36.06(a).[2] This is especially true given that:: (1) subsection *10 (a) ends with a colon, signifying that a list of different, means for committing an offense under subsection (a) is to follow; and (2) subsections (a)(1) and (a)(2) are separated by the - disjunctive “or,” which supports a conclusion that (a)(1) and (a)(2) are alternative means- of committing a section 36.06 offense. See id. In other words, we disagree with Brock that subsections (a)(1) and (a)(2) are two separate arid distinct offenses. They are but two sides of the same coin.[3]
We also recognize that subsections (a)(1) and (a)(2) have common punishment ranges, and Texas courts have recognized “[ojbstruction or retaliation is a result-oriented offense.” Christmas v. State, 464 S.W.3d 832, 839, 2015 Tex.App. LEXIS 3621, at *13 (Tex.App. — Houston [14th Dist.] Apr. 14, 2015, pet. refd) (mem. op., not designated for- publication) (citing Herrera v. State, 915 S.W.2d 94, 98 (Tex. App. — San Antonio 1996, no pet.)). Moreover, the gravamen of a section 36.06 offense is the intent to harm and prevent or delay another as - a public servant. See Herrera, 915 S.W.2d at 98; see also Christmas, 464 S.W.3d at 839, 2015 Tex. App. LEXIS 3621, at *13.
.Arid perhaps' most importantly, because a section 36.06 offense is a “result-oriented offense,” different types of conduct, which subsections (a)(1) and (a)(2) are, do'not constitute separate offenses. See Gonzales, 304 S.W.3d- at 848 (“ ‘If the focus of the offense is the result — that is, the offense is a ‘result of conduct’ crime — then different types of results are considered to be separate offenses, but different types of conduct are not.’ ” (quoting Huffman, 267 S.W.3d at 907)). And finally, we note that the parties have not indicated, nor are we aware of, an expression that the Legislature intended subsections (a)(1) and (a)(2) to .be two separate and distinct offenses.
Based on the foregoing, we hold that subsections (a)(1) and (a)(2) of section 36.06 of the Penal. Code are alternative means of committing a section 36.06 offense. Therefore, the State was authorized to allege in a single count different means — namely, subsections (a)(1) and (a)(2) — for committing an offense under section 36.06. See Tex. Penal Code Ann. § 36.06; Cada v. State, 334 S.W.3d 766, 770-71. (Tex.Crim.App.2011) (stating that section 36.06(a) of the Penal Code contains numerous different elements, “but several of those elements inchjide distinct alternatives, which may or may not be included in a particular indictment and jury charge.... The indictment and jury charge must contain at least one item from each numbered element, but it may contain more than one alternative element '....”); Kitchens, 823 S.W.2d at 258; Martin, 95 Tex.Crim. at 402-03, 254 S.W. *11 971; Renfro, 827 S.W.2d at 535; see also Phillip, 1998 WL 148098, at *3, 1998 Tex. App. LEXIS 1984, at *8. And as such, ■■we cannot say that the indictment is duplicitous or, in other words, alleges two separate crimes in a single paragraph in the indictment. See Tex.Code Crim. Proc. Ann. art. 21.24(b); see also Skillern, 890 S.W.2d at 872; Gahl, 721 S.W.2d at 895; Galvan, 699 S.W.2d at 666. We- overrule Brock’s second issue, . ,
III. ExtRAneous-Offense Evidence
In his fourth issue, Brock asserts that the trial court abused its discretion in admitting evidence of extraneous offenses that was used to demonstrate Brock’s intent to commit the charged offense in this case. Brock contends that the admission of the extraneous-offense evidence violated Texas Rule of Evidence 403. See Tex.R. Evid. 403.
A. Facts
The record reflects that the State filed a notice of its intent to introduce evidence of Brock’s prior convictions for retaliation and stalking, as well as other extraneous acts that constitute retaliation and/or assault on a public servant. In response, Brock filed a motion in limine, seeking to prevent the State from introducing evidence concerning extraneous offenses and any of his prior convictions or violations of the law. The trial court ultimately ruled that the State could only offer evidence concerning a threat Brock made against Paul Franks.
During the questioning of Coryell County Sheriff Johnny Burks, the State sought to introduce a copy of a Facebook communication between Brock and Sheriff Burks. Brock objected based on the lack of authentication. The trial court overruled Brock’s objection. When the State again offered the Facebook message for admission into evidence, Brock requested a running objection. The trial court overruled Brock’s objection once again and admitted the exhibit. Brock excepted. ■
Thereafter, Sheriff Burks testified about the contents of the message he received firan Brock, which is as follows:
Maybe I’m wrong, but that sounds like just a bunch of bullshit. What the hell do you mean, not around anymore? Williams is all over the place. I’ve heard that I could find Franks if I wanted to, but I don’t want to, though, cuz [sic] if anybody was, he’d be the first to pay with his life. What damn difference should it make if . they still work for you or not? I’m sorry to bother you. I really don’t ever want to hear from you again. Shalom and blessings.
It is this evidence that forms the basis of Brock’s complaint in this issue.
B. Discussion
To preserve • error for appellate review, a complaining party must make a timely and specific objection. See Tex. R.App. P. 33.1(a)(1); Wilson v. State, 71 S,W.3d 346, 349 (Tex.Crim.App.2002). Texas courts have held that points of error on appeal must correspond or comport with objections and arguments, made at trial. Dixon v. State, 2 S.W.3d 263, 273 (Tex.Crim.App.1998); see Wright v. State, 154 S.W.3d 235, 241 (TexApp. — Texarkana 2005, pet. ref'd). “Where a trial objection does not comport with the issue raised on appeal, the appellant has preserved nothing for review.” Wright, 154 S.W.3d at 241; see Resendiz v. State, 112 S.W.3d 541, 547 (Tex.Crim.App.2003) (holding that an issue was not preserved for appellate review because appellant’s trial objection “does not comport with” the issue he raised on appeal); Ibarra v. State, 11 S.W.3d 189, 197 (Tex.Crim.App.1999) (same).
*12 As stated earlier, Brock complains on appeal that the introduction of the Face-book message violated Rule 403, or in other words, the- evidence should have been excluded by the trial court because the probative value of the evidence was substantially outweighed by its prejudicial effect. However, at the time that the State sought to introduce the Facebook message, Brock objected that the message had not been properly authenticated. Because Brock did not make a specific objection under Texas Rule of Evidence 403 at the time the evidence was introduced, we conclude, that Brock’s complaint on appeal does not comport with his trial-court objection. See Tex.R.App. P. 33.1(a); Dixon, 2 S.W.3d at 273; see also Wright, 154 S.W.3d at 241. And. as such, we cannot say that Brock has preserved this complaint for review. See Resendiz, 112 S.W.3d at 547; Ibarra, 11 S.W.3d at 197; see also Wright, 154 S.W.3d at 241.
Despite the fact that his trial-court objection does not comport with his complaint on appeal, Brock argues that this issue is preserved because he raised a Rule 403 objection at a May 7, 2014 hearing conducted on his motion in limine. A review of the record shows that Brock did indeed raise a Rule 403 objection at the hearing. However, a “pretrial motion in limine certainly preserved no error. ‘For error to be preserved with regard to the subject matter of [a] motion in limine, it is absolutely necessary that an objection be made at the time when the subject is raised during the trial.’” Wilkerson v. State, 881 S.W.2d 321, 326 (Tex.Crim.App. 1994) (quoting Gonzales v. State, 685 S.W.2d 47, 50 (Tex.Crim.App.1985)); see Martinez v. State, 98 S.W.3d 189, 192 (Tex. Crim.App.2003) (“But a motion in limine does not preserve error.”); see also Basso v. State, No. 73,672, 2003 WL 1702283, at *14, 2003 Tex.Crim.App. Unpub. LEXIS 3, at- *40 (Tex.Crim.App. Jan. 15, 2003) (“A trial court’s grant of a motion in limine does not preserve error; a defendant must object when the evidence is offered.”). Therefore, because Brock did not raise a Rule 403 objection at the time the evidence was offered, we cannot say that the argument he raised at the May 7, 2014 hearing on his motion in limine effectively preserved this complaint for review. See Martinez, 98 S.W.3d at 192; Wilkerson, 881 S.W.2d at 326; Gonzales, 685 S.W.2d at 50; see also Basso, 2003 WL 1702283, at *14, 2003 Tex.Crim.App. Unpub. LEXIS 3, at *40. Wé overrule Brock’s fourth issue.
IV. The Teial CoüRt’s JURY INSTRUCTION
In his third issue, Brock contends that the trial court impermissibly granted the State a directed verdict on an element of the offense by instructing the jury that Judge Lee was a “public servant” under Texas law. Brock admits that he did not object to the trial court’s instruction at trial; however, he argues that the error is structural and that reversal is mandatory.
A. Facts
Here, the abstract portion of the jury charge stated the following, in pertinent part:
I.
A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act either (1) in retaliation for or on account of the service or status of another as a public servant or (2) to prevent or delay the service of another as a public servant
II.
“Public servant” means a person elected, selected, appointed, employed, or other *13 wise designated as one of the following, even if he has not yet qualified for office or assumed his duties:
(A) an officer, employee, or agent of government;
(B) an- arbitrator, referee, or other person who is authorized by law or private written agreement to hear or determine a cause or controversy; or
(C) an attorney at law or notary public when participating in the performance of a government function ...
You are instructed that a judge of a County Court at Law is a public servant.
The charge also provided instructions to the jury that: (1) “All persons are presumed to be innocent and no person may be convicted of an offense unless each element of the offehse is proved beyond a reasonable doubt”; and (2) “The prosecution has the burden of proving the defendant guilty and it must do so by proving each and every element of the offense charged beyond a reasonable doubt, and if it fails to do so, you must acquit the defendant.” See Olivas v. State, 202 S.W.3d 137, 144 (Tex.Crim.App.2006) (“Instead, the instructions repeatedly told the jury that the State had the burden to prove every element of the offense beyond a reasonable doubt. These instructions are not comparable to the misdirection on reasonable doubt found to be structural error in Sullivan. ”). Nevertheless, in this issue, Brock complains that the trial court should not have instructed the jury to presume that a judge of a County Court of Law is a public servant.
B. Applicable Law
In reviewing a jury-charge issue, an appellate court’s'first duty is to determine whether error exists in the jury charge. Hutch v. State, 922 S.W.2d 166, 170 (Tex.Crim.App.1996). If error is found, the appellate court must analyze that error for harm. Middleton v. State, 125 S.W.3d 450, 453-54 (Tex.Crim.App. 2003). If an error was properly preserved by objection, reversal .will be necessary if the error is not harmless. Almanza v. State, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985). Conversely, ’if error was not preserved at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did riot receive a fair and impartial trial. -.Id. To obtain reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. Sanchez v. State, 376 S.W.3d 767, 775 (Tex.Crim.App.2012); Arline v. State, 721 S.W.2d 348, 352 (Tex.Crim.App. 1986). In examining the record for egregious harm, we consider the entire jury charge; the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. Olivas, 202 S.W.3d at 144. Jury-charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. Stuhler v. State, 218 S.W.3d 706, 719 (Tex.Crim.App.2007); Sanchez v. State, 209 S.W.3d 117, 121 (Tex.Crim.App. 2006).
Article 36.14 of the Code of Criminal Procedure requires that the trial court deliver to the jury a “written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.” Tex.Code Grim. PROC. Ann. art. 36.14 (West 2007). “A charge that assumes the truth of a controverted issue is a comment on the weight of the evidence and is erroneous.” Whaley v. *14 State, 717 S.W.2d 26, 32 (Tex.Crim.App. 1986); see Grady v. State, 634 S.W.2d 316, 317 (Tex.Crim.App.1982) (observing that the “trial court in its' charge to the jury-should never give the jury an instruction which constitutes a comment by the court on the elements on the alleged offense, or assumes a disputed fact”). - Trial courts have “broad; discretion” in submitting proper definitions and explanatory phrases to aid the jury. Nava v. State, 379 S.W.3d 396, 420 (TexApp. — Houston [14th Dist.] 2012), aff'd, 415 S.W.3d 289 (Tex.Crim. App.2013) (citing Nejnaoui v. State, 44 S.W.3d 111, 119 (Tex.App. — Houston [14th Dist.] 2001, pet. ref'd)); see Shipp v. State, 331 S.W.3d 433, 444 (Tex.Crim.App.2011) (Meyers, J., concurring). But a trial court has no discretion in determining what the law is or, applying, the law to the facts. State v. Kurtz, 152 S.W.3d 72, 81 (Tex. Crim.App.2004).
C. Discussion
The application portion of the jury charge instructed that the jury could find Brock guilty of the charged offense if they found, beyond a reasonable doubt, that Brock “intentionally or knowingly threaten[ed] to harm another, to-wit: Judge John Lee, by an unlawful act, to-wit: stating in a threatening tone of voice: and demeanor “I got something for you just waiting,” in retaliation for, on account of, or to prevent or delay the service of John Lee as a public servant, to-wit: Judge of the County Court at Law of Coryell County _■” The trial court’s charge did not instruct the jury to presume'that John Lee was a public servant. Rather, the jury was free to decide whether the State had proven beyond a reasonable doubt, that John Lee was a County Court at Law judge for Coryell County. Furthermore, section -1.07(a)(41) of the Penal Code provides that an elected judge is a “[pjublic servant.” See Tex. Penal Code Ann. §. 1.07(a)(41) (West Supp.2014).[4] Therefore, the complained-of instruction comports with the definition for public servant provided in section 1.07(a)(41) of the Penal Code. See id; see also Riddle v. State, 888 S.W.2d 1, 8 (Tex.Crim.App.1994) (“A jury charge which tracks the language of a particular statute ip.a proper charge on a statutory issue.”)., Given that trial courts have “broad discretion” in submitting proper definitions and explanatory phrases to aid the jury, we cannot say that the trial court’s inclusion of the complained-of instruction in the charge was erroneous. See Nava, 379 S.W.3d at 420; Nejnaoui, 44 S.W.3d at 119; see also Shipp, 331 S.W.3d at 444.
And to the extent that it can be argued that the complained-of instruction was erroneously included in the charge, we cannot say that Brock was egregiously harmed. This is true because Judge Lee’s status as a public servant was not contested at trial. In fact, Judge Lee testified *15 that he is a public servant, and Brock’s trial counsel conceded during final argument that Judge Lee is a public servant.[5] On this record, we cannot conclude that the purported charge error was so egregiously harmful that it deprived Brock of a fair trial. See Stuhler, 218 S.W.3d at 719; Sanchez, 209 S.W.3d at 121; Olivas, 202 S.W.3d at 144; Almanza, 686 S.W.2d at 171.
Moreover, because the purported error involves the jury charge and the trial process itself, we reject Brock’s contention that the purported error is structural and requires reversal without a consideration of harm. See Johnson, v. United States, 520 U.S. 461, 468-69, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (listing the following as structural errors: the total deprivation of counsel at trial, lack of an impartial trial judge, the unlawful exclusion of members of the defendant’s race from a grand jury, the denial of the right of self-representation at trial, the denial of the right to a public trial, and an instruction that erroneously lowers the burden of proof for conviction below the “beyond a reasonable doubt” standard); Jordan v. State, 256 S.W.3d 286, 290 (Tex.Crim.App.2008) (noting that an error which “affeet[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself’ and “render[s] a trial fundamentally unfair” is “structural error” which is not amenable to a harm analysis); Trevino v. State, 100 S.W.3d 232, 241-42 (Tex.Crim.App.2003) (“We have made clear that ‘except for certain federal constitutional errors labeled by the United States Supreme Court as structural, no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement, is- categorically immune to a harmless error analysis.’ Jury charge error is not structural error and therefore must be reviewed for - harm.” (quoting Cain v. State, 947 S.W.2d 262, 264 (Tex.Crim.App.1997))). We overrule Brock’s third issue.
V. Sufficiency of the Evidence
In his first issue, Brock argues that the evidence supporting his conviction is insufficient because no actionable speech occurred in this matter, and because the evidence does not show that Judge Lee was prohibited or delayed from exercising his judicial function.
D. Applicable Law
■In Lucio v. State, 351 S.W.3d 878, 894 (Tex.Crim.App.2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:
In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Hooper v. State, 214 S.W.3d 9,13 (Tex.Crim.App.2007). This “familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.” Jackson, 443 U.S. at 319, 99 S.Ct. 2781. “Each fact need not *16 point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction.” Hooper, 214 S.W.3d at 13.

Id.

Our review of “all of the evidence” includes evidence that was properly and improperly admitted. Conner v. State, 67 S.W.3d 192, 197 (Tex.Crim.App.2001). And if the record supports conflicting inferences, we must presume that the fact-finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. Jackson, 443 U.S. at 326, 99 S.Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: “Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.” Hooper, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. Chambers v. State, 805 S.W.2d 459, 461 (Tex.Crim.App.1991).
The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. Malik v. State, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). A hypothetically-correct jury charge does four things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State’s burden of proof or unnecessarily restrict the State’s theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. Id.
E. Discussion
Brock was charged by indictment with committing an offense under section 36.06 of the Penal Code. Accordingly, the State was required to prove that Brock intentionally or knowingly harmed or threatened to harm Judge Lee by an unlawful act either: (1) in retaliation for, or on account of, his services as a public servant; ór (2) to prevent or delay the service of Judge Lee as a public servant. See Tex. Penal Code Ann. § 36.06; Lebleu v. State, 192 S.W.3d 205, 209 (Tex.App. — Houston [14th Dist.] 2006, pet. ref'd); see also Hooper v. State, No. 03-08-00125-CR, 2009 WL 3230842, at *5-6, 2009 Tex.App. LEXIS 7880, at **15-16 (Tex.App. — Austin Oct. 9, 2009, pet. ref'd) (mem. op., not designated for publication).
The central purpose of the statute is to encourage public servants to perform vital public duties without fear of retribution.’ Doyle v. State, 661 S.W.2d 726, 729 (Tex.Crim.App.1983). The statute does not require that the threatened retaliatory harm be imminent, nor does it require that the actor actually iñtend to carry out his threat, take any affirmative steps to carry out the threat, or issue’ the threat directly to the public servant or witness. Lebleu, 192 S.W.3d at 209. Retaliation is a result-oriented offense, and the focus is on whether the conduct is done with an intent to effect the result specified in the statute. Herrera, 915 S.W.2d at 98. Retaliatory intent may be inferred from an accused’s acts, words, or conduct. Dues v. State, 634 S.W.2d 304, 305 (Tex.Crim.App. [Panel Op.] 1982); see In re B.P.H., 83 S.W.3d 400, 407 (Tex.App. — Fort Worth 2002, no pet).
On appeal, Brock contends that his statement to Judge Lee cannot'be interpreted as an expression of an intent to harm or assault. As such, Brock alleges that his statement was not a “true threat” and, thus, was protected free speech under *17 the United States Constitution. We disagree.
Comments can be evaluated as threats based, not just on the language used, , but also the context -within which they are uttered, even veiled threats. Manemann v. State, 878 S.W.2d 334, 338 (Tex.App.— Austin 1994, pet. ref'd) (concluding that the following statement was a threat to inflict serious bodily injury on or commit a felony against the hearer: “I know where you work and I’m going to get your' ass, m_f_So just wait, Bitch, I’m going to get you, Bitch”).
Whether a particular statement may properly be considered to be a threat is governed by an objective standard— whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates .the statement as a serious expression of intent to harm or assault. United States v. Orozco-Santillan, 903 F.2d 1262, 1265 (9th Cir.1990); United States v. Mitchell, 812 F.2d 1250, 1255-56 (9th Cir.1987). The test is whether a threat would justify apprehension by an ordinary hearer, not whether the threat communicated over the telephone caused a particular recipient to actually become apprehensive. State v. Weippert, 183 Minn. 339, 237 N.W. 1 (1975). Threats of physical harm need not be directly expressed, but may be contained in veiled statements nonetheless implying injury to the recipient when viewed' in all the circumstances. State v. McGinnis, 243 N.W.2d 583 (Iowa 1976).
Id. at 337; see Orozco-Santillan, 903 F.2d at 1262 (concluding that the following communication was a threat: “You m f_, you will pay for this” in the context of an earlier conditional threat at the time of arrest, “Take these handcuffs off and I’ll kick your f_ass.”).
In evaluating Brock’s statement, we focus on the precise threat required to support his conviction under section 36.06 of the Penal Code. See Tex Penal Code Ann. §■ 36.06. All the threat that is needed to support this conviction is for Brock to have threatened harm by an unlawful act. See id.; see also Meyer v. State, 366 S.W.3d 728, 731 (TexApp. — Texarkana 2012). Harm is defined as “anything reasonably regarded as loss, disadvantage, ’ or inju-ry_” Tex. -Penal .Code Ann. § 1.07(a)(25). While one certainly threatens, harm .if he. or she threatens to cause someone bodily injury, a threat of physical injury , is not required. See Meyer, 366 S.W.3d at 731.
The record reflects that Brock was upset with Judge Lee for not granting him a personal-recognizance bond in another matter. Judge Lee recalled that Brock was disruptive when that case was being tried before a jury. Brock glared at Judge Lee during the trial, and Judge Lee described Brock’s demeanor as follows: “His body posture ... shaking his head ... mumbling under his breath. From the very start, he was out to disrupt the process.” Brock continued his disruptive behavior until Judge Lee directly admonished him. Judge Lee testified to the following: “It had been going on for hours, I had had plenty of his childish behavior. I told him, You’re getting on my last nerve. I don’t want to see you sitting there shaking your head anymore.’ ” Judge Lee told Brock to sit up so that they could finish the trial. In response to Judge Lee’s admonishments, Brock gave a “mean look” and said, “Oh, I’ve got something for. you, just wait.” Based on his glare, demeanor, and posture, several courtroom observers, including Judge, Lee, perceived Brock’s statement as a threat. See Lebleu, 192 S.W.3d at 209 (holding that testimony by witnesses that the defendant threatened a witness is sufficient *18 to. support a.«charge of retaliation). Shortly thereafter, Brock attempted to qualify his statement by stating that he intended to present testimony to Judge Lee. He also lifted his arms in the air to be handcuffed, signifying that he knew that he had said something wrong. And when given the opportunity to present testimony to Judge Lee in the DWI matter after being called- as a witness by his Own defense counsel, Brock refused.
Based on the combined and cumulative force of all the evidence and testimony, we conclude that a reasonable person could interpret' the statemen Brock' made to Judge Lee as a threat to harm Judge Lee by an unlawful act, thoqgh it was more of an implied or veiled threat. See Manemann, 878 S.W.2d at 337-38 (“That a threat is subtle does not make it less of a threat .... Alleged threats should be considered in light of their entire factual context, including the surrounding events and the reaction of the listeners.”); Meyer, 366 S.W.3d at 731-32 (holding that the evidence supporting appellant’s conviction is sufficient to demonstrate that he threatened a judge when he stated the following in a letter: “Now the chips will fall where they will .... Proceed further at your own personal risk!”); see also Austin v. State, No. 10-12-00066-CR, 2013 WL 490000, at *1-2, 2013 Tex.App. LEXIS 1234, at **4-5 (Tex.App. — Waco Feb. 7, 2013, pet. ref d) (mem. op., not designated for publication) (affirming a retaliation conviction where the defendant left three voice messages with a code enforcement officer for the City of Waco that included a threatening rap song and statements'that the defendant was going to “come at him”; he was going to “catch a murder case”; and the following' statement: “you’re gonna get done, son”); Gohe v. State, No. 02-10-00131-CR, 2011 WL 1435158, at *4-5, 2011 Tex.App. LEXIS 2840, at **9-11 (Tex.App. — Fort Worth Apr 14, 2011, pet. ref'd) (mem. op., not designated for publication) (affirming a retaliation conviction where the defendant told another that she intended to “take care of this judge,” that she was “going to take matters in her own hands,” and that “she was not afraid to go to jail”).
Viewing the evidence in the light most favorable to the verdict, we hold that a rational factfinder could have concluded that Brock threatened to harm Judge Lee by an unlawful act in retaliation for his actions as a public servant.[6] See Tex PenaI. Code Ann. § 36.06(a)(1); Lebleu, 192 S.W.3d at 209; see also Jackson, 443 U.S. at 319, 99 S.Ct. at 2789; Lucio, 351 S.W.3d at 894; Hooper, 214 S.W.3d at 13. Therefore, based on the foregoing, we hold that the evidence is sufficient to support Brock’s conviction under section 36.06(a) of the Penal Code. See Tex. Penal Code Ann. § 36.06(a); see also Jackson, 443 U.S. at 319, 99 S.Ct: at 2789; Lucio, 351 S.W.3d at 894; Hooper, 214 S.W.3d at 13. We overrule Brock’s first issue.
VI. Conclusion
Having overruled all of Brock’s issues on appeal, we affirm the judgment of the trial court.

. The Bloekburger test is usually used in the multiple-punishments or Double-Jeopardy context. See Garfias v, State, 424 S.W.3d 54, 58-59 (Tex.Crim.App.2014). Specifically, the Court of Criminal Appeals has mentioned:
The starting point of an "elements” analysis in the multiple-punishments context is the Bloekburger test, used to determine whether each of the offenses requires proof of an element that the other does not. In doing so, courts must focus on the elements alleged in the charging instrument — not on the offense as defined in the Penal Code. Under this so-called cognate-pleadings approach, double-jeopardy challenges can be made even against offenses that have different statutory elements, if the same facts required to convict are alleged in the indictment.
But as we indicated in our prior opinion, the Bloekburger test is only a starting point — it is a rule of statutory construction, not the exclusive indicator of a double-jeopardy violation. The Bloekburger test cannot allow two punishments for a single course of conduct when the Legislature intended to authorize only one.
Id. at 58-59.

. See Todd v. State, 89 Tex.Crim. 99, 102, 229 S.W. 515 (Tex.Crim.App.1921) (stating that "when several ways are set forth in the same statute by which an offense may be committed, and all are embraced in the same definition, and made punishable in the same way, they are not distinct offenses and may be charged conjunctively in the same count.”).

, This is further conveyed by the title of the section — "Obstruction or Retaliation." At least one intermediate court has referred to án offense under section 36.06 as the singular offense of "[o]bstruction or retaliation,” suggesting subsections (a)(1) and (a)(2) are simply different ways to commit the same section 36,06 offense. See, e.g., Christmas v. State, 464 S.W,3d 832, 839, 2015 Tex. App. LEXIS 3621, at *13 (Tex. App. — Houston [14th Dist.] Apr. 14, 2015, pet. ref'd) (mem. op„ not designated for publication). Furthermore, a couple of other statutory - provisions also imply that subsections (a)(1) and (a)(2) are different ways to commit the same section 36.06 offense. See Tex. Health & Safety Code Ann. § 250.006(a)(24) (West Supp.2015) (prohibiting employment in certain facilities serving the elderly, persons with disabilities, or persons with terminal illnesses if a person has been convicted of “an offense under Section 36.06, Penal Code (obstruction or retaliation)”); see also "Tex. Penal Code Ann. § 19.03(a)(2) (West Supp.2015) (providing that a person may commit the offense of capital murder if he “intentionally commits the murder in the course of committing or attempting to commit ... arson, obstruction or retaliation, or terroristic threat_” (emphasis added)).

. Section 1.07(a)(41) of the Penal Code del-fines a "[p]ublic servant” as:
[A]person elected, selected, appointed,, employed, or otherwise designated as one of the following, even if he has hot yet qualified for office or assumed his duties: ’
, (A) An officer, employee, or agent of government;
(B) A juror or grand juror; or(B) A juror or grand juror; or
(C) An arbitrator, referee, or other person who is authorized by law or private written agreement- to hear or determine a cause or controversy; or ,
(D) An attorney at law or notary public when participating in the performance of a governmental function; or
(E) A candidate for nomination or election to public office; or
(F) A person who is performing a governmental function under a claim of right although he is not legally qualified to do so.
Tex. Penal Code Ann. § 1.07(a)(41) (West Supp. 2014).

. Specifically, during final argument, Brock’s trial counsel stated:
First of all — let’s start with the witness, Judge Lee. We’re going to go through the road map bit by bit. Judge Lee — and I have the utmost respect for Judge Lee. He is a judge, and he deserves respect. He is a public servant, as that has been proven.

. As noted earlier, Brock's trial counsel did not dispute the fact that Judge Lee is a public servant,