# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00475-CR

**Darrell Lofton, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-14-302031, HONORABLE KAREN SAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In three issues, appellant Darrell Lofton challenges his conviction for the offense of retaliation against a public servant. *See* Tex. Penal Code § 36.06(a)(1). Specifically, he contends that (1) the trial court erred in admitting extraneous-offense evidence; (2) the evidence supporting his conviction is insufficient; and (3) he received ineffective assistance of counsel. We will affirm the trial court's judgment.

## BACKGROUND

On October 8, 2014, Travis County Sheriff Greg Hamilton was driving on Highway 290 when Lofton pulled up beside his vehicle, rolled down his window, held up five fingers, and yelled, "[Y]ou've got five days, motherfucker," then drove away. The incident arose from the fact that Child Protective Services (CPS) had taken custody of Lofton's children a couple of weeks

earlier. Lofton was arrested and charged with retaliation under Texas Penal Code section 36.06(a)(1). *See* Tex. Penal Code § 36.06(a)(1). He pled not guilty and waived his right to a jury trial.

At a trial before the court, the State introduced substantial evidence of Lofton's behavior toward the sheriff's department relating to the custody matter in the days leading up to, and on the day of, the offense. The evidence showed a series of encounters in which Lofton expressed escalating anger toward various members of the sheriff's department, including evidence that Lofton had indicated that he knew where Sheriff Hamilton lived and had been to his home because he wanted "to see [the sheriff] when he walk[ed] out of his house at night[.]" The evidence was introduced to demonstrate that, by his "five days" remark to Sheriff Hamilton, Lofton intended to threaten Sheriff Hamilton with bodily harm if Sheriff Hamilton did not facilitate the prompt return of Lofton's children. The trial court found Lofton guilty and assessed punishment at ten years' confinement. Lofton appealed.

## DISCUSSION

### I. Extraneous-offense evidence under Texas Rule of Evidence 404(b)

In his first issue, Lofton argues that the trial court abused its discretion in admitting extraneous-offense evidence in violation of Texas Rule of Evidence 404(b). *See* Tex. R. Evid. 404(b). Specifically, he challenges the trial court's admission of evidence of his encounters with members of the sheriff's department in the days before and on the day of the offense.

2

**A.** **Applicable law**

**1. Use of extraneous-offense evidence**

An extraneous offense is not admissible as character evidence to show that the accused acted in conformity with his character and committed an offense. *See* Tex. R. Evid. 404(b)(1). An extraneous offense is defined as any act of misconduct, whether prosecuted or not, that is not shown in the charging papers. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003). To constitute an extraneous offense, the evidence must show a crime or bad act and that the defendant was connected to it. *Johnson v. State*, 190 S.W.3d 838, 840 (Tex. App.—Fort Worth 2006, no pet.). If the evidence fails to show that an offense was committed or that the defendant was connected to the offense, then evidence of an extraneous offense is not established and rule 404(b) is not implicated. *Harris v. State*, 738 S.W.2d 207, 224 (Tex. Crim. App. 1986).

Extraneous-offense evidence may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Tex. R. Evid. 404(b)(2). If extraneous-offense evidence is offered, the opponent may object on the basis that the evidence has no value other than showing propensity based on bad character. *See Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g). A trial court's decision on the admissibility of extraneous-offense evidence is reviewed for an abuse of discretion. *See id.* The court's decision to admit the evidence will not be reversed if it falls within the zone of reasonable disagreement. *See id.*

3

## 2. Use of extraneous-offense evidence to establish intent in a prosecution for retaliation

Under the retaliation statute, a person commits an offense if he intentionally or knowingly threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant. Tex. Penal Code § 36.06(a)(1). A "threat" is a communicated intent to inflict harm. *Wilkins v. State*, 279 S.W.3d 701, 704 (Tex. App.—Amarillo 2007, no pet.) (citing Black's Law Dictionary 1519 (8th ed. 2004)); *Gillette v. State*, 444 S.W.3d 713, 723 (Tex. App.—Corpus Christi 2014, no pet.) (terroristic-threat statute).

Intent may be inferred from an accused's acts, words, or conduct. *Guevara v. State,* 152 S.W.3d 45, 49 (Tex. Crim. App. 2004). Specifically, evidence of extraneous threats by an accused may be admissible to establish the accused's criminal intent. *Sewell v. State*, 629 S.W.2d 42, 46 (Tex. Crim. App. 1982). "The extraneous offense must possess the requisite similarities, such as proximity in time or place or common mode of the act to render it admissible on the issue of intent." *Id*.; *see also Davis v. State*, 890 S.W.2d 489, 493 (Tex. App.—Eastland 1994, no pet.) (holding in a retaliation-by-threat case that evidence of "extraneous threats was admissible to show appellant's" hostile intent); *Gillette*, 444 S.W.3d at 734-35 (upholding admission of appellant's previous letter to his congressman threatening to begin "offensive combat preparations against the federal government" in terroristic-threat prosecution).

## B.     Lofton presents no reversible error

On appeal, Lofton contends that the trial court erred in admitting evidence of extraneous offenses at his trial in violation of rule 404(b). He complains about the testimony of

seven witnesses, which he broadly argues "deal with the alleged extraneous offenses." As to two of those witnesses—Deputy Carlton Brown and Detective Paul Salo—Lofton fails to specify the portions of their testimony that he challenges and thus waives any error as to their testimony. *See* Tex. R. App. P. 38.1(i) (appellant's argument "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"); *see also Wolfe v. State*, 509 S.W.3d 325, 343 (Tex. Crim. App. 2017) (appellate court has no obligation to construct appellant's issues, facts, or arguments with appropriate citations to authorities and to the record); *Melton v. State*, No. 03-17-00096-CV, 2017 WL 2729897, at *1 (Tex. App.—Austin June 21, 2017, no pet. h.) (mem. op.) (to perform an independent review of the record for error "would be placing ourselves in the role of [appellant]'s advocate"). As to the other witness testimony that Lofton challenges, we conclude that he presents no reversible error.

### 1. Deputy Alan Hollenbeck's testimony

Lofton first cites portions of testimony provided by Deputy Alan Hollenbeck of the Travis County Sheriff's Office regarding statements Lofton made to him during a conversation on September 25, 2014—approximately two weeks before the charged offense—while Hollenbeck transported Lofton to the Travis County jail. According to Deputy Hollenbeck, Lofton commented that Lofton should have armed himself during his encounter with law enforcement that had occurred on Lofton's property:

> Deputy:      [Lofton] told me that he should have gotten his pistol and posted up so that he could have made us get off of his land and . . . .
>
> Prosecutor:  And by "posted up," what does that expression mean?

5

Deputy:     Well, I assumed that he meant get his pistol and set in an ambush position to shoot at us as we approached his property.

We first note that Lofton does not explain how that testimony constitutes extraneous-offense evidence so as to implicate rule 404(b). *See Harris*, 738 S.W.2d at 224; *Castillo v. State*, 59 S.W.3d 357, 361 (Tex. App.—Dallas 2001, pet. ref'd) (defendant's comments about his desire to commit an offense do not implicate rule 404(b)) (citing *Massey v. State*, 933 S.W.2d 141, 154 (Tex. Crim. App. 1996)).[1] And even assuming that the cited testimony does constitute such evidence, it was admissible under rule 404(b)(2) to show Lofton's intent with respect to the charged offense. *See* Tex. R. Evid. 404(b)(2). Deputy Hollenbeck also testified that, during the exchange, Lofton said that "what made him angriest . . . was that his children were going to be taken by CPS." Lofton's comment, therefore, tended to establish his animosity toward the sheriff's department regarding his loss of custody of his children in the weeks leading up to the charged offense and his willingness to resort to violence against members of that department. Thus, it was similar to the charged offense in proximity in time, subject, and mode. *See Sewell*, 629 S.W.2d at 46; *Davis*, 890 S.W.2d at 493; *Gillette*, 444 S.W.3d at 734-35. Accordingly, the trial court could have reasonably concluded that

---

[1] In fact, Lofton provided no argument in support of his rule 404(b) claim and instead substantively bases his arguments on Rule 403, which he did not raise at trial. *See Montgomery v. State*, 810 S.W.2d 372, 388 (Tex. Crim. App. 1991) (op. on reh'g) (rule 404(b) objection does not preserve 403 argument); *Gillette v. State*, 444 S.W.3d 713, 734 (Tex. App.—Corpus Christi 2014, no pet.) (noting appellant failed to properly brief his rule 404(b) issue because his argument discussed only rule 403). We further note that it is unclear whether Lofton sufficiently preserved his rule 404(b) argument as to the cited testimony. At trial, he raised a rule 404(b) objection to an earlier portion of Deputy Hollenbeck's testimony regarding other threatening comments Lofton had directed to Deputy Hollenbeck during that same exchange. Assuming without deciding that his objection was sufficient to include all of Deputy Hollenbeck's testimony regarding that exchange, we conclude that the trial court did not err in admitting it.

the statements helped demonstrate the intent behind the charged offense and that the prior statements thus had permissible probative value. *See* Tex. R. Evid. 404(b)(1).

### 2. Sergeant Blakely Wallace's testimony

Appellant next cites a portion of testimony provided by Sergeant Blakely Wallace of the Travis County Sheriff's Office in which Sergeant Wallace stated that he had interacted with Lofton "off and on for close to 20 years." The record does not reveal that Lofton raised a rule 404(b) objection to that testimony, and he thus preserved nothing for review. *See* Tex. R. App. P. 33.1(a); *Mitchell v. State*, 102 S.W.3d 772, 775 (Tex. App.—Austin 2003, pet. ref'd). Further, the testimony does not constitute rule 404(b) evidence, so the trial court did not err in admitting it. *See Castillo*, 59 S.W.3d at 361.

### 3. Deputy William Haro's testimony

Appellant next cites testimony from Deputy William Haro of the Travis County Sheriff's Office regarding a phone call he had with Lofton on October 7, 2014, the day before the charged offense:

> Prosecutor: Sir, I want to direct your attention to October 7th, 2014, and ask you if you responded to a call for service at an address on Dee Gabriel Collins Road in Travis County?
>
> . . . .
>
> Deputy: During the course of the -- we were talking. I'm pretty sure I asked [Lofton] -- you know, there's several mobile homes and houses on his property, and I was asking him, well, which one are you staying at at this time? And he just started ranting. That's the only way to describe

7

it. You know, his voice was raised and he was just talking about prior stuff.

Prosecutor:  Okay. Was he angry?

Deputy:  Yes.

Prosecutor:  Would it be fair to say agitated?

Deputy:  Yes, he was agitated.

. . . .

You know, he was talking about previous cases. I believe he was arrested prior to this.

Prosecutor:  Okay. And, specifically, though, did he say anything about his children being removed by Child Protective Services?

Deputy:  Yes.

Lofton did not object to that testimony and thus waived the issue. *See Mitchell*, 102 S.W.3d at 775. Furthermore, even had Lofton preserved the issue, and assuming that the testimony constituted prohibited extraneous-offense evidence under rule 404(b)(1), it was admissible under rule 404(b)(2) to show Lofton's intent with respect to the charged offense. *See* Tex. R. Evid. 404(b)(1), (2). Specifically, it tended to establish Lofton's escalating anger regarding the removal of his children from his custody by the state immediately before the charged offense. *See Sewell*, 629 S.W.2d at 46 (extraneous-offense evidence admissible to show intent if similar in proximity in time or place or common mode of the act); *Davis*, 890 S.W.2d at 493 (extraneous-offense evidence admissible to show appellant's hostile intent).

8

### 4. Detective David Johnson's testimony

Lofton next cites testimony provided by Detective David Johnson of the Travis County Sheriff's Office regarding an encounter he had with Lofton on October 7, 2014, the day before the charged offense. During that encounter, Lofton received a phone call from a CPS caseworker, and Detective Johnson overheard Lofton make threatening comments to the caseworker regarding the custody matter:

> Detective:   We got out toward the area where you enter and exit to get wanded in and to be checked in and the phone rang. And I could hear a young lady's voice, she was from CPS, and she wanted to talk to him about his visitation with his children. And he went up - went off on her and made some comments to her that, you know, something in regards to - it's in the report - that she is only going to have to deal with him one more time. It really concerned me, so I brought it to my superior's attention. I also wrote up a BOLO to advise that, you know, apparently there is a danger, possible danger to himself or other people. He was just losing it at that point.
>
> . . . .
>
> In the BOLO that I put out, it said, "Darrell blew up and told her he only needed to see his son one more time and they would only have to deal with him one more time. He never did make a direct threat, but his interaction with the CPS worker could certainly be concerning."

Lofton did not object to that testimony and thus waived the issue. *See Mitchell*, 102 S.W.3d at 775. Furthermore, to the extent that the testimony constituted impermissible character evidence under rule 404(b)(1), it was admissible under rule 404(b)(2) to show Lofton's intent with respect to the charged offense. *See* Tex. R. Evid. 404(b)(1), (2). Specifically, his comment that CPS "would only have to deal with him one more time" tended to further establish Lofton's

escalating anger regarding the custody matter and his intention to take unlawful action if his demands were not met. *See Sewell*, 629 S.W.2d at 46 (evidence of past threats admissible to show that appellant's threats were serious); *Gillette*, 444 S.W.3d at 734 ("Evidence of appellant's prior threats undermined his defensive theory that he was momentarily carried away but not intending to threaten anyone.").

### 5. Sergeant Steve Jones's testimony

Finally, Lofton cites a portion of testimony provided by Sergeant Steve Jones of the Travis County Sheriff's Office, in which Sergeant Jones testified that he had had "previous dealings" with Lofton. Again, Lofton did not object to that testimony and thus waived the issue. *See Mitchell*, 102 S.W.3d at 775. The testimony also does not constitute inadmissible extraneous-offense evidence under rule 404(b)(1). *See Harris*, 738 S.W.2d at 224; *Castillo*, 59 S.W.3d at 361.

Because Lofton does not demonstrate an abuse of discretion, we overrule his first issue.

## II.     Sufficiency of the evidence

### A.     Standard of review

In determining whether the evidence is sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We may not reevaluate the weight and credibility of the evidence and substitute our judgment for that of

the factfinder.  *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).  We defer to the factfinder's resolution of any conflicting inferences from the evidence and presume that it resolved such conflicts in favor of the judgment.  *Jackson*, 443 U.S. at 326; *Whatley v. State*, 445 S.W.3d 159, 165 (Tex. Crim. App. 2014).

We must determine whether the inferences necessary to support the verdict are reasonable in light of the cumulative force of all of the evidence, including both direct and circumstantial evidence.  *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).  "It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt."  *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13).  Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13.

**B.      Retaliation against a public servant under Texas Penal Code section 36.06(a)(1)**

In the present case, the State was required to show that Lofton intentionally or knowingly threatened to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant.  *See* Tex. Penal Code § 36.06(a)(1); *see also Lebleu v. State,* 192 S.W.3d 205, 209 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).  The central purpose of the retaliation statute is to encourage public servants to perform vital public duties without fear of retribution.  *Brock v. State*, 495 S.W.3d 1, 16 (Tex. App.—Waco 2016, pet. ref'd). The statute does not require that the threatened harm be imminent, that the actor actually intend to

11

carry out his threat, or that he take any affirmative steps to carry out the threat. *Id*. Retaliation is a result-oriented offense, and the focus is on whether the conduct is done with an intent to effect the result specified in the statute. *Id*. Retaliatory intent may be inferred from an accused's acts, words, or conduct, including evidence of extraneous threats by the accused. *See Guevara*, 152 S.W.3d at 49; *Sewell*, 629 S.W.2d at 46.

### C. The record supports Lofton's conviction

Lofton contends that the statement made by him to Sheriff Hamilton did not constitute a threat under the statute. We conclude that the trial court did not err in determining from all of the evidence, including Lofton's behavior surrounding the charged offense, that when Lofton indicated to Sheriff Hamilton that Hamilton had "five days," he was threatening to harm Hamilton by assault, aggravated assault, or murder because of Hamilton's status as a public servant. *See* Tex. Penal Code § 36.06(a)(1).

The record shows that Lofton blamed the sheriff's department for his loss of custody of his children. It reveals a period of escalating aggressive and threatening behavior by Lofton toward members of the sheriff's department regarding that matter and his willingness to resort to violence in the weeks preceding the offense. Deputy Hollenbeck testified that, on the transport to jail after Lofton was arrested following a disturbance call on September 25, 2014, Lofton called him "a sorry motherfucker multiple times, told me that he observed my true colors and that he would remember me. He also told me that the next time I dealt with him I wouldn't be able to put handcuffs on him." Lofton also lamented not having "gotten his pistol and posted up so that he

12

could have made us get off of his land," which Deputy Hollenbeck interpreted as an intent to ambush law enforcement when they approached his property.

Sergeant Wallace testified that he had a phone conversation with Lofton on October 4, 2014, four days before the offense. Sergeant Wallace described Lofton as "very upset and agitated" and that he "expressed displeasure with the sheriff's department and expressed dissatisfaction with the way our previous interactions had gone." He said that Lofton told him that he "was at a breaking point and that if we wanted to, we could all just get guns and have a shootout; and that if he lost his children, that would be a game-changer."

The record also contains substantial testimony regarding Lofton's conduct on October 7, 2014, the day before the offense. Deputy Haro similarly testified that he had an encounter with Lofton in which Lofton "just started ranting" about "previous cases," and that he expressed anger about "his children being removed by Child Protective Services." He said that Lofton "made statements regarding not caring what happened to him and if he did not get his children back by the following Wednesday . . . that he would make himself known to CPS and Travis County Sheriff's Office."

Detective Johnson described an encounter with Lofton that same day during which he overheard a conversation Lofton had with a CPS caseworker. Detective Johnson testified that Lofton "blew up and told [the CPS caseworker] he only needed to see his son one more time and they would only have to deal with him one more time." Lofton's comments so concerned Detective Johnson that he informed his superior about the incident and indicated that he believed Lofton was a "possible danger to himself or other people." Sergeant Jones similarly testified that Lofton called

13

him and said that "he was tired of the sheriff's office fucking with him, and the next time that he saw me it would be to do something more than to put something on paper."

Sheriff Hamilton testified regarding the charged offense, which occurred the following day. He said that, as he was traveling down Highway 290, Lofton pulled up next to his vehicle, rolled down his window, held up five fingers, and yelled, "[Y]ou've got five days, motherfucker," and then "drove off recklessly[.]" Sheriff Hamilton confirmed that he perceived the statement as a threat to cause him bodily injury. He further confirmed that he and other members of the sheriff's department took the threat seriously "based on all the circumstances [they] knew about Lofton" and "everything that had happened in the recent past."

Sheriff Hamilton's executive assistant, Laura Jean Maldonado, testified that Lofton called the sheriff's office multiple times the day of the offense "upset" and "cursing." He told Maldonado that Sheriff Hamilton "had five days to return his kids to him or something would happen." He shouted that "he wanted his kids back" and said, "I'm done with this, I don't care anymore.'" He told Maldonado that he went to Sheriff Hamilton's house "because I want to see him when he walks out of his house at night" and indicated that he knew where Sheriff Hamilton lived. She testified that she reported it to internal affairs because she believed Lofton intended to harm Sheriff Hamilton.

Sheriff Hamilton testified that once he learned that Lofton had indicated that he had been to Hamilton's house, he went home to check on his daughter out of concern for her safety. He explained that he and other members of the sheriff's department then took numerous security measures that they believed were necessary to safely arrest Lofton.

14

Deputy Brown testified that, on the transport to jail after they had arrested Lofton, Lofton "was angry" and described his encounter with Sheriff Hamilton. Lofton referred to Hamilton as "our bitch ass sheriff" and said that "our sheriff was scared. . . . [Lofton] stated that the sheriff's office was going to have to kill him over this shit because he did not care about living without his kids."

Detective Salo read portions of letters written by Lofton while in jail, in which Lofton described his encounter with Sheriff Hamilton:

> "We're side by side now moving along about 35 miles per hour, and I told him, 'you got five days get my fucking kids home, nigga,' held up my hand, five fingers, and repeated, 'five days, nigga.' . . . I was soon far away and madder now than ever. . . . That's what scares me about leaving here. I don't know who I am. I just know my life was stripped away by demons of a different type. I have no fear nor anything to lose.'"

The letters further revealed that Lofton specifically blamed Sheriff Hamilton for the difficulties in his life.

Lofton contends that the evidence does not support an inference that he intended to physically harm Sheriff Hamilton when making the charged statements. He notes that "[t]he record is void of any threat to shoot, kill, or attack Greg Hamilton." However, a threat need not be an explicit threat to inflict harm to constitute a threat under the retaliation statute: "'Threats of physical harm need not be directly expressed, but may be contained in veiled statements nonetheless implying injury to the recipient when viewed in all the circumstances.'" *Brock*, 495 S.W.3d at 17 (quoting *Manemann v. State,* 878 S.W.2d 334, 338 (Tex. App.—Austin 1994, pet. ref'd)); *see also Davis*, 890 S.W.2d at 491 (appellant's statement that he had "a criminal mind . . . messed up

15

on drugs," that he "just might do anything" because he was tired of [CPS] "messing with" him constituted threat to CPS worker); *Cover v. State*, 913 S.W.2d 611, 618 (Tex. App.—Tyler 1995, pet. ref'd) (upholding finding of threat based on inmate's letter reminding a witness that inmate would be "out in 2 years," mentioning witness's children, and ending, "Well I hope I don't see you soon Ray—but who knows what the future may hold. This place can really turn a heart to stone[.]"). As previously detailed, the trial court could have reasonably concluded that Lofton intended to threaten Sheriff Hamilton with physical harm based on all of the evidence of Lofton's statements and conduct surrounding the charged offense.

Lofton also argues that his comments did not constitute a threat because they did not threaten imminent harm. He notes that (1) the threat was conditioned upon the failure to return Lofton's children and (2) he made them as he "drove down the highway making it very difficult for Lofton to harm him at that point," and it was unclear whether he possessed a weapon at the time. In support, he cites *Parnell v. State*, No. 12-09-00387-CR, 2010 WL 2638064, at *2 (Tex. App.—Tyler June 30, 2010) (mem. op., not designated for publication). But *Parnell* involved a prosecution for terroristic threat under Texas Penal Code section 22.07(a)(2), which requires that the accused "have the specific intent to place a person in fear of imminent serious bodily injury." *See id.* By contrast, a threat of imminent harm is not an element of retaliation against a public servant under Texas Penal Code section 36.06(a)(1). *See* Tex. Penal Code § 36.06(a)(1); *see also Zorn v. State*, 222 S.W.3d 1, 2 (Tex. App.—Tyler 2002, pet. dism'd) ("[R]etaliation does not require that the actor threaten with the intent to place a person in fear of imminent serious bodily injury"); *Coward v. State*, 931 S.W.2d 386, 389 (Tex. App.—Houston [14th Dist.] 1996, no pet.). Indeed, the fact that Lofton's

16

threat was conditioned upon Sheriff Hamilton's failure to return his children supports the trial court's finding that Lofton made it in retaliation for or on account of Sheriff Hamilton's service or status as a public servant. *See* Tex. Penal Code § 36.06(a)(1).

Lofton further contends that the record does not support the conviction because it contains evidence that Sheriff Hamilton and other law enforcement did not "tak[e] Mr. Lofton's words seriously." First, as previously detailed, the record contained substantial testimony that members of the sheriff's department did take Lofton's comments seriously and took precautions accordingly. Second, "'[w]hether a statement constitutes a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by recipient of the statement as a serious expression of intent to harm.'" *Brock*, 495 S.W.3d at 17 (quoting *Manemann*, 878 S.W.2d at 337)). We conclude that a review of all the evidence supports a determination that a reasonable person would interpret Lofton's comments as a serious expression of intent to harm Sheriff Hamilton.

Lofton also argues that the evidence is factually insufficient to support the conviction. However, the court of criminal appeals has clarified that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We have reviewed his arguments under the applicable standard and determined that they are without merit.

Because the evidence supports Lofton's retaliation conviction, we overrule his second issue.

17

## III.    Ineffective assistance of counsel

In his third issue, Lofton claims that he received ineffective assistance of counsel because, he contends, his jury-trial waiver was involuntary in light of the State's notice to introduce extraneous-offense evidence. He argues that "his waiver of the right to a jury trial was rendered involuntary because he was unaware that extensive 404(b) elements filed *the same day* of trial would be considered by the trial judge." He contends that, therefore, "[a]n inherent *conflict* exists that appellant would argue 'tips the scale' to more 'unfair prejudice' when a jury trial is waived and 404(b) evidence is considered at a bench trial."

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms, and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 693-94 (1984); *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001). "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Mallett*, 65 S.W.3d at 63. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

The record shows, and Lofton concedes, that he waived a jury trial at a pretrial hearing in accordance with Texas Code of Criminal Procedure article 1.13(a). He seems to contend that his waiver was later rendered involuntary because of some act or omission by his counsel with

18

respect to the State's notice of intent to introduce extraneous-offense evidence under rule 404(b). But Lofton fails to specify what act or omission by counsel he challenges. A reviewing court cannot sustain an ineffective-assistance challenge based upon speculation. *See Thompson*, 9 S.W.3d at 813; *see also Huynh v. State*, 833 S.W.2d 636, 638 (Tex. App.—Houston [14th Dist.] 1992, no pet.). He also cites no authority in support of the proposition that assistance of counsel is rendered ineffective when a defendant waives his right to a jury trial and the State provides notice of intent to use extraneous-offense evidence. *See* Tex. R. App. P. 38.1(i); *see also Wolfe*, 509 S.W.3d at 343 ("Under Rule 38.1(i), appellant's argument must make direct references to facts in the record and applicable legal authority.").

To the extent that Lofton contends that his counsel was deficient for failing to object to any extraneous-offense evidence introduced on the basis of insufficient notice under rule 404(b), we conclude that the record does not establish a claim of ineffective assistance of counsel. The record contains a copy of the State's notice that was filed with the trial court the day of the hearing, which included the testimony that Lofton challenges on appeal. But the record does not affirmatively demonstrate when defense counsel first received notice of the State's intent to introduce that evidence. Absent a clear indication in the record that Lofton's counsel did not timely receive notice of the State's intent to introduce the testimony that Lofton challenges on appeal, we cannot conclude that defense counsel's performance was deficient.[2] *See Blackmon v. State*, 80 S.W.3d 103, 107 (Tex.

---

[2] At minimum, the record shows that, at a pretrial hearing months before trial, the State stated its intention to use extraneous-offense evidence at trial under rule 404(b) to show Lofton's motive and intent as to the charged offense. The State's attorney specified that the State intended to "offer evidence of numerous instances where the defendant threatened to shoot officers" and that he "was about to lose everything and didn't care." Lofton waived his right to a jury trial about a month later. The record thus undermines any suggestion that Lofton was wholly unaware, when he

19

App.—Texarkana 2002, pet. ref'd) (rejecting ineffective-assistance claim where record did not contain "clear indication" that defense counsel had not timely received State's notice under rule 404(b)); *see also Agbogwe v. State*, 414 S.W.3d 820, 836-37 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (rejecting ineffective-assistance claim where only indication that defense counsel did not actually receive notice of State's intent to use extraneous-offense evidence that State had not included in its written notice was appellant's assertion in his appellate brief); *Frankenfield v. State*, No. 03-05-00715-CR, 2008 WL 4603572, at *15 (Tex. App.—Austin Oct. 16, 2008, no pet.) (mem. op., not designated for publication) (observing that State's notice under rule 404(b) need not be in writing).

Furthermore, Lofton fails to explain how a failure to object to extraneous-offense evidence on the basis of insufficient notice, even if established, would have rendered his decision to waive a jury trial involuntary. He seems to suggest that the potential for unfair prejudice that admission of extraneous-offense evidence poses is greater at a trial before the court than at a trial before a jury. However, he offers no authority in support of that argument. Rather, this Court has observed that such evidence actually poses a lesser risk of unfair prejudice when introduced at a bench trial:

> [W]hen a case is tried to a trial court rather than to a jury, the danger that the trier of fact will consider extraneous offense evidence for anything other than the limited purpose for which it is admitted is reduced, and the likelihood that the extraneous evidence will unfairly prejudice the defendant is diminished.

---

waived a jury trial, that the State intended to introduce extraneous-offense evidence of the type he challenges on appeal, even if he had not yet received notice compliant with rule 404(b).

20

*Corley v. State*, 987 S.W.2d 615, 621 (Tex. App.—Austin 1999, no pet.).  In light of that authority, and given the extensive extraneous-offense evidence that the State intended to introduce, defense counsel would not have been deficient in advising Lofton to waive a jury trial and proceed to a trial before the court.

Because Lofton fails to show that defense counsel's representation with respect to either the State's admission of extraneous-offense evidence or Lofton's waiver of a jury trial fell below an objective standard of reasonableness, we overrule his third issue.

## CONCLUSION

We affirm the judgment of the trial court.

_____

Cindy Olson Bourland, Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Affirmed

Filed:   July 31, 2017

Do Not Publish