

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| SAMUEL LYN REAVES, | § | No. 08-21-00186-CR |
| Appellant, | § | Appeal from the |
| v. | § | 18th Judicial District Court |
| THE STATE OF TEXAS, | § | of Johnson County, Texas |
| Appellee. | § | (TC# DC-F201700692) |

## MEMORANDUM OPINION

The State charged Appellant by indictment in Johnson County with driving while intoxicated 3rd, and retaliation.[1] The jury found Appellant guilty of driving while intoxicated, a third-degree felony offense enhanced by two prior convictions, and retaliation.[2] TEX. PENAL CODE ANN. §§ 49.04, 49.09(b), 36.06. The jury assessed punishment at confinement for a term of ninety-nine years and twenty-five years respectively, to run concurrently.

---

[1] This case was transferred from the Tenth Court of Appeals pursuant to a docket equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the precedent of the Tenth Court of Appeals to the extent it might conflict with our own. *See* TEX. R. APP. P. 41.3.

[2] The State also indicted Appellant for attempted taking of an official weapon, but the jury found him not guilty of this charge.

In two issues, Appellant contends that the evidence was insufficient to support either of his convictions.[3] We affirm. Because all issues are settled law, we issue this memorandum opinion. TEX. R. APP. P 47.4.

*Factual and Procedural Background*

On July 27, 2017, around 5:00 p.m., Sergeant Justin Smith of the Johnson County Sheriff's Office was dispatched to a residence in the county to investigate a domestic disturbance between Appellant and his mother. Smith concluded, based on his experience in law enforcement, that both parties were intoxicated, and he arranged to separate the two in order to resolve the dispute. A few hours later, Appellant returned to the residence, which resulted in a new disturbance and a 911 call by a neighbor. The caller informed the police that Appellant was intoxicated and leaving the residence in a white vehicle heading towards Alvarado.

Corporal Sean Walters of the Alvarado Police Department testified that he received a call from dispatch describing a "possibly intoxicated" driver in a white vehicle leaving a disturbance. He parked his patrol vehicle, waited for the described vehicle to pass him, and then began to follow behind it. Walters, observed the vehicle swerving on the wrong side of the road, signaling without completing a turn, and driving on the wrong side of the road. Walters initiated a traffic stop, and the driver pulled over into the parking lot of a convenience store. Walters further testified Appellant, the driver, exited the vehicle as soon as he pulled over. Walters questioned Appellant, and he observed that Appellant had red, bloodshot eyes, slow speech, slow reactions, unsteady balance, and a strong odor of alcohol on his breath. Appellant, informed Walters that he was a diabetic and was experiencing an episode of high blood sugar. Walters testified he had experience

---

[3] In addition to the brief filed by his appointed counsel, Appellant has filed his own pro se reply brief and three motions which raise additional points of error. However, a defendant has no right to hybrid representation, and we do not consider Appellant's pro se filings. *See Jenkins v. State*, 592 S.W.3d 894, 902 n.47 (Tex. Crim. App. 2018).

on medical calls involving people having diabetic episodes, but he did not believe Appellant was having an episode because "the smell of somebody having a diabetic issue is usually like a sweet smell as opposed to the metabolized alcoholic beverage smell." He also testified that low blood sugar, not high blood sugar as Appellant suggested, would more closely mimic the effects of alcohol in his experience.

Walters attempted to administer a field sobriety test to Appellant, but he refused to comply. Walters testified that Appellant struggled to answer any of his questions and continually lost his balance, falling backwards Footage from Walters's body-worn camera shows Appellant struggling to maintain balance, being non-responsive to questions, and refusing to take a field sobriety test. Based on the totality of the circumstances—Appellant's erratic driving, demeanor, and refusal to take a field sobriety test—Walters arrested Appellant for driving while intoxicated.

When Walters placed Appellant in his patrol vehicle, Appellant became "belligerent," threatening to beat and harm Walters. Walters testified that he believed Appellant was threatening him because he was arresting Appellant. Walters transported Appellant to the jail where he was taken to the book-in area, and Walters read Appellant his DIC-24 statutory warnings. Appellant refused to provide a blood or breath sample, and Walters began the process of obtaining a blood warrant. During this time, Appellant continued to threaten Walters verbally, saying that he was "going to get [him.]". When Walters attempted to leave the booking area, Appellant reached for Walters TASER, attempting to remove it from his holster. Walters testified that Appellant was unable to remove the TASER from his holster because it locks into place. The jailers restrained Appellant, and Walters applied for the search warrant to draw Appellant's blood, which a judge granted. After Walters obtained the search warrant, Appellant was taken to the intoxilyzer room in the jail to have his blood drawn. Walters testified that he remained with Appellant while a nurse

3

drew his blood. He took the vials of blood and the kit, followed the instructions on the kit, and applied tamper seals to both vials and on the outside to seal it shut. He then personally transported the test kit from the jail to the police department to be entered into evidence.

The State produced evidence establishing the chain of custody for Appellant's kit. Dylan Mansell, the Alvarado Police Department evidence supervisor, testified that he received the kit for storage in the evidence locker before mailing it to the Waco DPS Crime Laboratory for testing. Lindsay Hatfield testified she received the kit, analyzed one of the samples for alcohol, and returned the kit back to the Alvarado Police Department. Hatfield testified that the analysis of Appellant's blood sample indicated a blood-alcohol level of 0.251.

*Standard of Review*

When reviewing a challenge to the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App 2007). Our review gives deference to the trier of fact, and the jury is the sole judge of the credibility of a witness's testimony and the weight to be given to that testimony. *Metcalf v. State*, 597 S.W.3d 847, 855 (Tex. Crim. App. 2020). The jury may believe all, some, or none of a witness's testimony. *Id.*

*Driving While Intoxicated*

In Appellant's first issue, Appellant challenges the sufficiency of the evidence to support his conviction for driving while intoxicated. Specifically, he contends the State failed to meet its

burden to establish Appellant's blood-alcohol level was above the legal limit because the State did not establish a chain of custody for the kit and that the "kit was never admitted into evidence."[4]

A person commits the offense of driving while intoxicated if the person is intoxicated while operating a motor vehicle in a public place. TEX. PENAL CODE ANN. § 49.04(a). An offense under Section 49.04 is a felony of the third degree if the person has been previously convicted of driving while intoxicated two times. *Id.* § 49.09(b)(2). The Penal Code defines "intoxicated" as "(A) not having the normal use of mental or physical faculties by reason of the introduction of alcohol . . . into the body; or (B) having an alcohol concentration of 0.08 or more." *Id.* § 49.01.

Here, the State produced direct evidence in the form of a lab report indicating Appellant's blood-alcohol level was 0.251, which exceeds the 0.08 limit. *Id.* The State also produced both direct and circumstantial evidence that Appellant did not have the use of his "mental or physical faculties." *Id.* Walters testified he observed Appellant, driving a motor vehicle, on a public road. He further testified Appellant was driving erratically, swerving into the oncoming lane of traffic, and eventually driving on the wrong side of the road. Once Walters initiated the traffic stop, he observed that Appellant smelled of alcohol, had difficulty standing, and was nonresponsive to questions. Additionally, Appellant refused to submit to a field sobriety test, which Walters testified, in his experience, could indicate Appellant was under the influence. Finally, Walters testified based on his training, experience, and observations, Appellant had lost the normal use of his mental faculties.

---

[4] We note that Appellant's assertion is incorrect—the kit was offered and admitted into evidence without objection. Thus, to the extent that Appellant has raised an evidentiary challenge to the foundation for the kit, his argument is waived. TEX. R. APP. P. 33.1(a).

Based on a review of the evidence in the light most favorable to the verdict, we conclude a rational fact finder could have found beyond a reasonable doubt that Appellant was intoxicated. *See Jackson*, 443 U.S. at 318-19. We overrule Appellant's first issue.

*Retaliation*

In Appellant's second issue, he contends that there is insufficient evidence to support his conviction for retaliation. A person commits the offense of retaliation if the person "intentionally or knowingly harms or threatens to harm another by unlawful act: (1) in retaliation for or on account of the service or status of another as a: (A) public servant, witness, prospective witness . . . ." TEX. PENAL CODE ANN. § 36.06 (a)(1)(A). "The statute does not require that the threatened retaliatory harm be imminent, nor does it require that the actor actually intend to carry out his threat." *Brock v. State*, 495 S.W.3d 1, 16 (Tex. App.—Waco 2016, no pet.). Intent may be inferred from acts, words, and conduct. TEX. PENAL CODE ANN. § 1.07(a)(25). Harm is defined as "anything reasonably regarded as loss, disadvantage, or injury . . . " *Id.* § 1.07(a)(25).

The record reflects that Appellant threatened Walters on multiple occasions, saying he would "beat" him. Audio from Walters's dash camera reveals Appellant saying "just you wait, I'm going to get you and beat [you]" as Walters places Appellant into the back of the vehicle. During the booking process, Appellant again threatened Walters, saying he was "going to get [him,]" and when Walters was leaving the booking area of the jail, Appellant attempted to take his TASER. Based on the evidence and testimony, we conclude that a reasonable fact finder could interpret Appellants verbal comments and conduct as threatening to harm Walters in retaliation for his arrest. *See, e.g., Brock v. State*, 495 S.W.3d at 18 (collecting cases). Appellants second issue is overruled.

## **CONCLUSION**

We affirm the judgment of the trial court, and all pending motions are denied.


SANDEE B. MARION, Chief Justice (Ret.)

December 22, 2022

Before Rodriguez, C.J., Alley, and Marion, C.J. (Ret.)
Marion, C.J. (Ret.) (Sitting by Assignment)

(Do Not Publish)