

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00522-CR

Marcel **REYES**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-CR-008324
Honorable Benjamin Robertson, Judge Presiding

Opinion by:    Lori Massey Brissette, Justice

Sitting:    Rebeca C. Martinez, Chief Justice
Lori Massey Brissette, Justice
Velia J. Meza, Justice

Delivered and Filed: June 3, 2026

AFFIRMED

Appellant Marcel Reyes appeals his judgment of conviction for retaliation pursuant to Texas Penal Code § 36.06. He contends the evidence presented at trial was legally insufficient for the jury to find him guilty of the offense because no harmful act was alleged. Based on the law and the record, we affirm.

## BACKGROUND

Reyes was indicted for retaliation in connection with a voicemail and text messages he sent his parole officer containing veiled threats. TEX. PENAL CODE § 36.06. After a one-day trial, a jury found him guilty, and the trial court sentenced him to eight years with the Texas Department of Criminal Justice Institutional Division. This appeal followed.

## LEGAL SUFFICIENCY

### A. Facts

Vanessa Hyland, a former State of Texas parole officer, testified Reyes was assigned to her on May 8, 2025, and she conducted a home visit on him the following day. During the home visit, Reyes had a lot of questions about his term of supervision, and she told him they could discuss it in the parole office at a later time. Reyes—who testified he was very anxious about the home visit—asked Hyland for her help in connection with a purported twenty-day miscalculation of his discharge date and for mental health services, but she told him it was not her job to help him. He was very upset about the interaction.

A few days later, on Sunday, May 12, 2024 Reyes sent Hyland multiple text messages including:

- "I can very easily be provoked to get violent. Especially now."
- "Don't waste your time and effort on a violation report much less a . . . warrant. The new cautions would not give [me] prison time or [make me] eligible for any program. You would just piss me off. And I would be a civilian. And a misdemeanor would be worth it."
- "YOU TRIPPED AND FELL DOWN THE STAIRS TO THE STREET."[1]
- "When I was very little, I was a very mean boy. I even beat people up at Bible class. Even beat little girls I liked. Even invite[d] neighbors to play basketball and kick[ed] them out. I can show you bully just to have fun."
- "I[n] fact . . . [my] faint presence at your residence would not let you sleep in comfort."

---

[1] Hyland testified she never actually tripped and fell down the stairs.

- RESPECT MY HOUSE, I DON'T CARE IF YOU ARE ON OFFICIAL CAPACITY, THERE WILL BE PHYSICAL CONTACT ALL THE WAY TO THE STREET. THIS IS ROUTINE WITH CRAZY WOMEN. AND ALL THE AFFIDAVITS WILL BE PREPARED EXACTLY THE SAME.

Reyes also left her a voicemail, during which he apologized for seeming "rude, threatening, or harassing," explaining "in a stressful environment I become ballistic and once I realize people are taking advantage of me, I eventually snap." Hyland testified she understood the messages to be Reyes threatening to assault her because she was his parole officer and he wanted a new one. She believed Reyes intended for her to know that if she did not do what he wanted, he would get violent with her.

Reyes testified he was not upset when he sent the text messages; he was "stressed out" and "venting." He testified he could not "control [his] voice." He further testified he did not intend to hurt Hyland and would have never acted on his threats. He further testified he sent the messages because he had wanted to go to a mental health services clinic, instead of meeting with her, and also wanted a different parole officer.

## B. Analysis

Reyes contends his text messages were legally insufficient for the jury to find him guilty because they did not contain what could be interpreted by a reasonable parole officer as threats of specific harm or that he intended to threaten harm. As such, the messages comprised little more than a mere modicum of evidence and were legally insufficient under *Jackson v. Virginia*. *See generally* 443 U.S. 307 (1979).

### 1. Standard of Review and Applicable Law

Evidence is legally sufficient to support a conviction if, viewing all of the evidence in the light most favorable to the verdict, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *See, e.g.*, *Hernandez v. State*, 727 S.W.3d 83, 87 (Tex. Crim.

App. 2025). In our review, we consider all the evidence admitted at trial. *See id.* But this court does not act as a "thirteenth juror," and we do not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *Id.* The jury may draw reasonable inferences from the evidence admitted at trial based on their own common sense, personal experience, and "observations from life." *See id.* We measure the sufficiency of the evidence against the hypothetically correct jury charge. *Id.* A hypothetically correct jury charge accurately sets forth the statutory elements as modified by the charging instrument, does not increase the burden of proof of the State, and adequately describes the charged offense. *Id.*

A person commits the third-degree felony offense of retaliation if the person intentionally or knowingly threatens to harm another by an unlawful act in retaliation for or on account of the service or status of another as a public servant. TEX. PEN. CODE § 36.06(a)(1)(A).[2] Retaliatory intent may be inferred from an accused's acts, words, or conduct. *Brock*, 495 S.W.3d at 16. The statute does not require the threatened retaliatory harm be imminent, that the actor actually intend to carry out his threat, or that the actor take any affirmative steps to carry out the threat. *Id.* Comments may be evaluated as threats based, not just on the language used, but also the context within which they are uttered. *Id.* at 17. We apply an objective standard to determine whether a particular statement is properly considered a threat: whether a reasonable person would believe the recipient of the statement would believe it was a serious expression of intent to harm. *See id.* at 17 ("The test is whether a threat would justify apprehension by an ordinary hearer, not whether the threat communicated over the telephone caused a particular recipient to actually become apprehensive." (quoting *Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, pet.

---

[2] Because retaliation is a result-oriented offense, we focus on whether the threat is done with an intent to effect the *retaliation for or on account of the service or status of another as a public servant. Brock v. State*, 495 S.W.3d 1, 16 (Tex. App.—Waco 2016, pet. ref'd).

ref'd)). The maker of the statement does not need to directly express a threat of physical harm. *Brock*, 495 S.W.3d at 17. The threat of physical harm, viewed under consideration of all circumstances, may be a veiled one, implying injury to the recipient. *Brock*, 495 S.W.3d at 17; *Manemann*, 878 S.W.2d at 337. Although one certainly threatens assault if he or she intentionally or knowingly threatens another with imminent bodily injury, *see* Texas Penal Code § 22.01(a), a threat of physical injury is not required. *See Brock*, 495 S.W.3d at 17.

### 2. Application

Here, the indictment alleges that Reyes "did intentionally and knowingly threaten to harm . . . VANESSA HYLAND, by . . . threaten[ing] to assault [her], in retaliation for or on account of the service of VANESSA HYLAND as a public servant, namely a PAROLE OFFICER." Accordingly, a hypothetically correct jury charge would require the State to show Reyes intentionally or knowingly threatened to harm Hyland by threatening to assault her, in retaliation for or on account of her service as a parole officer. *See* TEX. PENAL CODE §§ 22.01(a); 36.06(a)(1)(A).

Reyes does not dispute the evidence was legally sufficient to show Hyland was his parole officer or that his statements were made in retaliation for or on account of the service or status of his parole officer. Accordingly, the only question before us is whether the evidence is legally sufficient to demonstrate Reyes intended to threaten to harm Hyland by threatening to assault her. *See Cada v. State*, 334 S.W.3d 766, 770 (Tex. Crim. App. 2011) (identifying retaliation elements).

Based on the combined and cumulative force of all the evidence and testimony, and evaluating the text messages in the context in which they were made, we conclude that a reasonable person could interpret Reyes's text messages to Hyland as Reyes intentionally or knowingly

threatening to harm her by threatening to assault her, though it was more of an implied or veiled assault threat. *See Brock*, 495 S.W.3d at 17.

Reyes's messages were prompted by the home visit and Hyland's perceived lack of empathy for his miscalculated discharge date and inability to secure mental health services. *See id.* Nevertheless, Reyes's retaliatory intent here may be inferred from his own words. *See id.* Reyes plainly stated in his voicemail he had been threatening, and his text messages, sometimes in all caps, made clear: (1) he was easily provoked to violence, (2) if Hyland filed a violation report, "a misdemeanor would be worth it," (3) he implied that he could make it look like an accident, (4) he beat up girls, and (5) there would be physical violence if she did not respect his house. *See id.*; *see also Manemann,* 878 S.W.2d at 337–38 ("That a threat is subtle does not make it less of a threat . . . . Alleged threats should be considered in light of their entire factual context, including the surrounding events and the reaction of the listeners."). Reyes even made it clear that he wanted her to feel his "faint presence" at her house so that she could not sleep in comfort, presumably because she would be scared of him. Hyland testified she understood these messages to be Reyes threatening to assault her because she was his parole officer. It does not matter that, as Reyes testified, he did not intend to carry out his threat. *See Brock*, 495 S.W.3d at 16.

Viewing the evidence in the light most favorable to the verdict, we hold that a rational factfinder could have concluded Reyes threatened to harm Hyland by assault in retaliation for her service as his parole officer. *See* Tex. PENAL CODE § 36.06(a)(1)(A); *Hernandez*, 727 S.W.3d at 87; *Brock*, 495 S.W.3d at 18. Accordingly, the evidence is sufficient to support Reyes's conviction. *See* TEX. PENAL CODE. § 36.06(a)(1)(A), (c).

## CONCLUSION

The trial court's judgment is affirmed.

Lori Massey Brissette, Justice

DO NOT PUBLISH