

# NUMBER 13-22-00303-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**DANIEL GARCIA,**                                                                          **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                                    **Appellee.**

---

### On appeal from the 24th District Court
### of DeWitt County, Texas.

---

## MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña**
**Memorandum Opinion by Justice Silva**

Appellant Daniel Garcia appeals his convictions of assault on a public servant and retaliation, *see* TEX. PENAL CODE ANN. §§ 22.01, 36.06, both third-degree felonies enhanced by appellant's prior felony convictions. *See id.* § 12.42(d). By five issues appellant argues (1)–(2) the evidence is legally insufficient to support his convictions;

(3) the trial court improperly denied his request to strike four venire members for cause; (4) "[t]he trial court improperly denied [appellant's] request for a mistrial after the jury contravened its instructions"; and (5) the judgment is void as it does not comport with the sentence assessed by the trial court. We affirm as modified.

## I. BACKGROUND

Appellant was indicted on one count of assault on a public servant and one count of retaliation. He pleaded not guilty and proceeded to trial.

At trial, appellant's sister Oralia Garcia testified that she called the police in the early morning hours of July 24, 2020, after appellant showed up at her doorstep around 2 or 3 a.m., barefoot and shirtless, refusing to leave. Oralia stated that when she greeted appellant at the door, he demanded that she bring him something to drink. She retreated inside the home while he remained on the porch "praying and singing." Oralia testified that she returned with a glass of water, and appellant then requested another drink. Upon returning with the second drink, appellant took the drink and then picked up a planter off the porch and threw it towards Oralia. Oralia quickly shut the front door to avoid getting hit with the planter. According to Oralia, there was nothing she had said or done prior to escalate the situation. Because appellant "kept hitting the door" and refused to leave, Oralia called the police.

Oralia clarified that, at the time, appellant resided in a small trailer on her property, situated behind her home, where she supports him financially. Oralia explained that it was not unusual for appellant to appear on her doorstep demanding food or something to drink, but appellant's timing and destructive behavior on this particular evening was

2

unusual. Oralia testified she briefly left the front porch area when officers arrived, and she returned several minutes later to find appellant on the ground getting arrested. On cross-examination, Oralia recalled hearing an officer instruct appellant to return to his trailer, and then later, Oralia heard appellant say, "Please don't hurt me." Oralia denied witnessing the officer draw his weapon or taser.

DeWitt County Sheriff's Officer Juan Julian Ruiz Jr. testified that he was on patrol on July 24, 2020, when he was dispatched to the residence. Deputy Ruiz stated he arrived to find appellant sitting on a porch swing shirtless and with only one shoe on. Deputy Ruiz identified himself as law enforcement. "As I was walking up, he told me not to take another step further. . . . He was going to f[-]ck me up," testified Deputy Ruiz. Deputy Ruiz, who was familiar with appellant, testified that appellant appeared more aggravated than usual and "just wasn't himself," noting appellant's "pinprick"-sized pupils and suspecting appellant to be "under the influence of some kind of narcotics or alcoholic beverage."

After speaking with Oralia, Deputy Ruiz instructed appellant "several times that he need[ed] to go home" and warned appellant that he would be arrested if he did not leave the premises. Deputy Ruiz stated that appellant refused and told him that he would have to "kill him to take him." Appellant then walked toward Deputy Ruiz and told him, "[Y]ou don't scare me, bitch. I'll f[-]ck you up." At that point, Deputy Ruiz notified appellant that he was going to be handcuffed and instructed appellant to turn around. Deputy Ruiz said appellant pushed "off" him, inadvertently fell to the ground, and began kicking Deputy Ruiz. As Deputy Ruiz radioed for backup, appellant struck Deputy Ruiz's legs "multiple times." Deputy Ruiz testified, "[Appellant] was cursing at me the whole time. He told me,

3

[']I told y'all I was going to hurt you['] or [']I was going to f[-]ck you up if you touched me.[']"

Deputy Ruiz testified that he drew his taser after appellant attempted to grab a nearby object off the ground. At the sight of the taser, appellant "stopped fighting right there on the spot" and said, "Don't hurt me." Appellant was taken into custody.

The jury returned a guilty verdict on both counts, and the case proceeded to punishment, where the State presented evidence of appellant's prior felony convictions. The jury assessed punishment at thirty-five years' imprisonment for each count. The trial court ordered the sentences to run concurrent. This appeal followed.

## II. SUFFICIENCY OF THE EVIDENCE

By his first and second issue, appellant argues that the evidence was legally and factually insufficient to support his convictions for assault on a public servant and retaliation.[1]

### A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, "we consider the evidence in the light most favorable to the verdict" and determine whether, based on the evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Edward v. State*, 635 S.W.3d 649, 655 (Tex. Crim. App. 2021) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see Brooks*, 323 S.W.3d at 912 (adopting the standard of review for a

---

[1] The Texas Court of Criminal Appeals has held that only one standard should be used to evaluate whether the evidence is sufficient to support a criminal conviction beyond a reasonable doubt: legal sufficiency. *See Brooks v. State*, 323 S.W.3d 893, 905–07 (Tex. Crim. App. 2010) (plurality op.); *see also Longoria v. State*, No. 13-22-00222-CR, 2023 WL 6631728, at *5 (Tex. App.—Corpus Christi–Edinburg Oct. 12, 2023, pet. ref'd) (mem. op., not designated for publication). Accordingly, we only apply the legal-sufficiency standard when addressing appellant's sufficiency arguments.

sufficiency challenge as set out by *Jackson*). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Edward*, 635 S.W.3d at 655; *see Garcia v. State*, 667 S.W.3d 756, 762 (Tex. Crim. App. 2023) ("If the record supports conflicting inferences, the reviewing court must presume that the factfinder resolved the conflicts in favor of the prosecution and defer to the jury's factual determinations.") (cleaned up). We remain mindful that "[c]ircumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Delagarza v. State*, 635 S.W.3d 716, 723 (Tex. App.— Corpus Christi–Edinburg 2021, pet. ref'd) (citing *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018)). We measure the sufficiency of the evidence by comparing the evidence produced at trial against "the essential elements of the offense as defined by the hypothetically correct jury charge." *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

## B.    Assault of a Public Servant

### 1.    Applicable Law

> Assault of a public servant requires proof of misdemeanor assault and that (1) the complainant was a public servant; (2) the actor knew that the complainant was a public servant; (3) the complainant was discharging an official duty when he was assaulted; and (4) the official duty was being discharged lawfully.

*Cuevas v. State*, 576 S.W.3d 398, 399 (Tex. Crim. App. 2019); *see* TEX. PENAL CODE ANN. § 22.01(a)(1), (b)(1). Under the Texas Penal Code, a person acts intentionally when it is his conscious objective or desire to cause the result of his action. TEX. PENAL CODE ANN.

5

§ 6.03(a). A person acts knowingly when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. *Id.* § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* The definition of "bodily injury" is purposefully broad, *see id.* § 1.07(a)(8), and includes physical pain "however minor." *Garcia v. State*, 367 S.W.3d 683, 688 (Tex. Crim. App. 2012); *see also Cabello v. State*, No. 13-19-00341-CR, 2022 WL 3451368, at *25 (Tex. App.—Corpus Christi–Edinburg Aug. 18, 2022, no pet.) (mem. op., not designated for publication) ("The existence of a cut, bruise, or scrape on the body is sufficient evidence of physical pain necessary to establish 'bodily injury' within the meaning of the statute." (quoting *Arzaga v. State*, 86 S.W.3d 767, 778 (Tex. App.—El Paso 2002, no pet.))).

### 2.    Analysis

Appellant argues the State failed to produce evidence that Deputy Ruiz was lawfully discharging an official duty at the time of the assault because appellant "was not engaged in public intoxication, as he was not in a public place." We find *Cuevas*, a recent Texas Criminal Court of Appeals case, to be instructive here. 576 S.W.3d at 400.

In *Cuevas*, a peace officer was off duty, working as a security guard and enforcing a "house rule," when appellant assaulted him. *Id.* at 399. The court of criminal appeals held that it was "immaterial" that the officer was enforcing a house rule, "that he was not trying to arrest Appellant, and that Appellant was not subject to prosecution for

6

violating . . . any other law," because "[a] peace officer may discharge an official duty even if it is also a private duty, and a person may be liable for assault on a public servant even if he is not subject to arrest for some other crime when he commits the assault." *Id.* at 400. The court upheld appellant's conviction of assault on a public servant. *Id.*

Here, Deputy Ruiz testified that he was at Oralia's residence in response to a call about a domestic disturbance involving appellant, discharging his duties. After Deputy Ruiz identified himself, appellant threatened to "f[-]ck [him] up," and then kicked him following Deputy Ruiz's attempts to get appellant to voluntarily leave the premises. Deputy Ruiz also sought to prevent further destruction of Oralia's property, noting the broken planter that Oralia had attributed to appellant. "It is the duty of every peace officer to preserve the peace within the officer's jurisdiction." *See* TEX. CODE CRIM. PROC. ANN. art. 2.13(a); *see also id.* art. 6.06 ("Whenever, in the presence of a peace officer, or within his view, one person is about to commit an offense against the person or property of another, including the person or property of his spouse, or injure himself, it is his duty to prevent it . . . ."). As was the case in *Cuevas*, it is of no consequence that appellant may not have been "subject to arrest for some other crime when he commit[ted] the assault." *See Cuevas*, 576 S.W.3d at 400. Because Deputy Ruiz, at the time of appellant's actions, was performing his peace officer duties, the factfinder could reasonably infer that, in harming Deputy Ruiz when and in the manner in which he did, appellant had the intent to harm a public servant. *See Edward*, 635 S.W.3d at 655; *Cuevas*, 576 S.W.3d at 400. We overrule appellant's first issue.

## C. Retaliation

7

### 1. Applicable Law

"A person commits the felony offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for the service or status of another as a public servant." *Cada v. State*, 334 S.W.3d 766, 770 (Tex. Crim. App. 2011); *see* TEX. PENAL CODE ANN. § 36.06(a)(1)(A). Whether a particular statement constitutes a threat is governed by an objective standard—"whether a reasonable person would foresee that the statement would be interpreted" as a serious expression of intent to harm or assault by those to whom the maker made the statement. *Brock v. State*, 495 S.W.3d 1, 17 (Tex. App.—Waco 2016, pet. ref'd). "Comments can be evaluated as threats based, not just on the language used, but also the context within which they are uttered, even veiled threats." *Id.* "The test is whether a threat would justify apprehension by an ordinary hearer, not whether the threat communicated . . . caused a particular recipient to actually become apprehensive." *See id.*

### 2. Analysis

As with his sufficiency challenge to the offense of assault on a public servant, appellant argues that he could not act in retaliation for or on the account of the service or status of a public servant when Deputy Ruiz was not "lawfully discharging his official duty by arresting [appellant] for a crime he was not committing." As we observed in *Dodds v. State*, No. 13-13-00288-CR, 2014 WL 6676774, at *4 (Tex. App.—Corpus Christi–Edinburg Nov. 25, 2014, no pet.) (mem. op., not designated for publication), this Court—as well as numerous sister courts—have held that a retaliatory act need not be contemporaneous with the public servant's performance of the public servant's official

8

duties. That is, evidence of appellant's aggressive response to a self-identified peace officer is sufficient to prove retaliatory intent beyond a reasonable doubt. *See Nandin v. State*, 402 S.W.3d 404, 408 (Tex. App.—Austin 2013, pet. ref'd) (holding evidence was sufficient to prove retaliatory intent because it showed defendant using an "aggressive posture, putting up his fists, and advancing towards the deputy who then pepper-sprayed him in the face," which prompted defendant to charge the deputy and try to hit him).

Appellant does not dispute that Deputy Ruiz was a public servant, that he threatened Deputy Ruiz, or that he kicked Deputy Ruiz after threatening him. *See Cada*, 334 S.W.3d at 770. The jury was further entitled to believe Deputy Ruiz's testimony—namely, that he was a public servant, appellant threatened to "f[-]ck" him up if he took a step further onto the property, and appellant kicked him repeatedly, during which appellant reiterated his prior threats to harm Deputy Ruiz—which were consistent in all important respects. Based on this evidence, a rational factfinder could have found that appellant's statement was a threat to harm Deputy Ruiz, in retaliation for, or on account, of Deputy Ruiz's status as a public servant. *See id.*; *see also Trejo v. State*, No. 13-16-00432-CR, 2018 WL 5534107, at *2 (Tex. App.—Corpus Christi–Edinburg Oct. 25, 2018, pet. ref'd) (mem. op., not designated for publication) (concluding evidence was sufficient to support retaliation charge where officer arrived at appellant's home in response to a call for assistance, and upon meeting appellant, appellant threatened that if the officer did not leave, "he was going to call his buddies to have him killed or he would kill [the officer] himself"). We overrule appellant's second issue.

9

## III. VOIR DIRE

Appellant next argues that the trial court abused its discretion in denying his challenges for cause to four venire members: 10, 11, 41, and 58—each with law enforcement ties.

### A. Standard of Review and Applicable Law

The purpose of voir dire is in part to elicit information that would establish a basis for a challenge for cause because the venire member is legally disqualified from serving or is biased or prejudiced for or against one of the parties or some aspect of the relevant law. *Sanchez v. State*, 165 S.W.3d 707, 710–11 (Tex. Crim. App. 2005). "A juror who states that he cannot consider the minimum punishment for a particular statutory offense is subject to a challenge for cause." *Cardenas v. State*, 325 S.W.3d 179, 185 (Tex. Crim. App. 2010); *see* TEX. CODE CRIM. PROC. ANN. art. 35.16(a) ("A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury."). "Where a party wishes to exclude a juror because of bias, it is the party seeking exclusion who must demonstrate, through questioning, that the potential juror lacks impartiality." *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016); *see Tracy v. State*, 597 S.W.3d 502, 512 (Tex. Crim. App. 2020). "The opposing party or trial judge may then examine the juror further to ensure that he fully understands and appreciates the position that he is taking, but unless there is further clarification or vacillation by the juror, the trial judge must grant a challenge for cause." *Cardenas*, 325 S.W.3d at 185. "A trial judge's ruling on a challenge for cause may be reversed only for a

10

clear abuse of discretion." *Tracy*, 597 S.W.3d at 512; *see Jacobs v. State*, 560 S.W.3d 205, 211 (Tex. Crim. App. 2018).

To preserve an objection to the denial of a challenge for cause, a defendant must have: (1) used all his peremptory strikes, (2) asked for and was denied additional peremptory strikes, and (3) accepted an identified objectionable juror whom defendant would not otherwise have accepted had the trial court granted the defendant's challenge for cause (or granted him additional peremptory strikes so that he might strike the juror). *Buntion*, 482 S.W.3d at 83; *Chambers v. State*, 866 S.W.2d 9, 22 (Tex. Crim. App. 1993); *see* TEX. CODE CRIM. PROC. ANN. art. 35.15 (b) ("In non-capital felony cases . . . , the State and defendant shall each be entitled to ten peremptory challenges."). To establish harm for an erroneous denial of a challenge for cause, the defendant must show on the record that he used a peremptory strike to remove the venireperson and thereafter suffered a detriment from the loss of the strike. *Comeaux v. State*, 445 S.W.3d 745, 750 (Tex. Crim. App. 2014); *Chambers*, 866 S.W.2d at 23.

**B.    Analysis**

The record demonstrates that appellant: (1) failed to use a peremptory strike on two of the four complained-of venire members; (2) failed to exhaust all of his peremptory strikes; (3) failed to request more peremptory strikes; and (4) failed to identify objectionable venire members who sat on the jury and on whom appellant would have removed had the trial court allowed for more peremptory strikes. The jury was subsequently empaneled without objection from appellant, and none of the objected-to venire members served on the panel. *Cf. Dukes v. State*, 486 S.W.3d 170, 176 (Tex.

11

App.—Houston [1st Dist.] 2016, no pet.) (providing that the defendant preserved error by objecting "to the empanelment of several jurors on whom he claimed he would have used peremptory challenges had his challenges for cause been granted or had he received the additional strikes that he had requested"); *see also Tillman v. State*, No. 14-98-01233-CR, 2001 WL 543666, at *3 (Tex. App.—Houston [14th Dist.] May 24, 2001, pet. ref'd) (mem. op., not designated for publication) (defendant preserved error when he requested and was denied ten additional peremptory strikes after the clerk called the names of the jurors but before they were sworn). Thus, appellant has failed to preserve error for our review. *See Comeaux*, 445 S.W.3d at 750 ("The steps to preserve error and establish harm are intended to allow the trial judge every opportunity to correct error and to allow the defendant to demonstrate that he did not have the benefit of using his peremptory challenges in the way that he desired."); *Chambers*, 866 S.W.2d at 23. We overrule appellant's third issue.

### IV. DENIAL OF MISTRIAL

Appellant argues by his fourth issue that "[t]he trial court improperly denied [his] request for a mistrial after the jury contravened its instructions."

### A. Standard of Review and Applicable Law

A trial court's denial of a motion for mistrial is reviewed for an abuse of discretion, and we uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Archie v. State*, 340 S.W.3d 734, 738 (Tex. Crim. App. 2011). "'[We] view[] the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling.'" *Gonzalez v. State*, 608 S.W.3d 98, 107 (Tex.

App.—San Antonio 2020, pet. ref'd) (quoting *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)). A mistrial is appropriate only in extreme cases of highly prejudicial error when spending any further time or effort on trial "would be wasteful and futile." *Gonzalez*, 608 S.W.3d at 108 (quoting *Ocon*, 284 S.W.3d at 884). Because mistrial is an extreme remedy, less drastic alternatives may suffice, such as instructing the jury to consider as evidence only the testimony and exhibits admitted through witnesses on the stand or questioning the jury about the extent of any prejudice. *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016). Ordinarily, we assume that a jury follows the instruction given, and we will not reverse in the absence of evidence that the jury was actually confused by the charge. *See Williams v. State*, 937 S.W.2d 479, 490 (Tex. Crim. App. 1996). The movant has the burden of proving the allegation of juror misconduct. *Hughes v. State,* 24 S.W.3d 833, 842 (Tex. Crim. App. 2000).

**B.    Analysis**

Here, appellant moved for a mistrial after the attorneys received a jury note during jury guilt/innocence deliberations. The following colloquy ensued:

| | |
|---|---|
| THE COURT: | What we have is a question from the jury that says ['C]an we do the punishment phase today[?'][2] I don't know exactly if there's anything implicit in that or not, but my proposal is to send them a note back that simply says before I can address your question you must render a verdict on—you must render a verdict on the issue of innocence or guilt. |
| [STATE]: | That makes sense. |
| THE COURT: | Is there an objection from that response to the Defense? |

---

[2] The jury note contained a file stamp of June 14, 2022, at 5:06 p.m.

13

[DEFENDANT]:      Judge, I object. First, I move for a mistrial. The jury has wholly disregarded your instructions of the Jury Charge by even talking about punishment. And, second, I think you should be a little more adamant in your response to them. You know, something along the lines of, you know, it's not appropriate for you at this time to be discussing punishment or something along those lines. I'll let you be the author of that. But I think yours is just—I think you're letting them off the hook. It's not right what they're doing, and I re-urge my mistrial. That's just not right. They have already made a decision and they haven't told you what the decision is.

THE COURT:      Right. They haven't even told me if they have a decision. Yes. I understand.

[DEFENDANT]:      Right. Exactly. If they don't have a decision then this is wholly inappropriate.

THE COURT:      It may be that they have reached a decision. They're just not understanding the process. And so what I'm going to do, I'll write it out and then I'll tell you on the record what I'm going to do.

[DEFENDANT]:      Okay.

THE COURT:      So what I need to do, Ms. Ruiz, if you will file this. You can tape it to a larger sheet if you want to. And if you will file stamp this and I will send that to them. You are allowed to let them read it and then tell them you want that note back. If they have any other notes or if they have a verdict or whatever, they can do that. But what you want to do is let them read it and then tell them that you need that note back.

The trial court's written response to the jury, containing a file stamp of June 14, 2022, at 5:10 p.m. read as follows: "Ladies and [g]entlemen of the jury: It is not appropriate to address any procedural issue at this time. At this time, the only issue which may be addressed is the issue of innocence or guilt as presented to you in the Court[']s Charge."

14

The jury thereafter indicated it had reached a verdict and returned a guilty verdict form containing a file stamp of June 14, 2022, at 5:15 p.m.

Although the record shows that appellant initially moved for a mistrial based on jury confusion or impropriety, neither was *in fact* later established. Indeed, it is not clear under these facts that the jury had not yet reached its verdict regarding innocence at the time it sent out the note at 5:05 p.m. inquiring about when punishment would occur because within five minutes of receiving the trial court's instruction to focus only on guilt/innocence—not punishment, it returned a guilty verdict. *See Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009); *Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *see also Wood v. State*, No. 02-22-00197-CR, 2023 WL 7037617, at *9 (Tex. App.—Fort Worth Oct. 26, 2023, no pet.) (mem. op., not designated for publication) (concluding the denial of motion for mistrial was appropriate where the trial court responded to the alleged impropriety by instructing the jurors they "were permitted to receive evidence 'only in open court'" and that "no juror is permitted to communicate to any other juror anything he or she may have heard regarding the case or any witness therein, from any other source than open court"); *Guerra v. State*, No. 08-22-00183-CR, 2023 WL 5508829, at *10 (Tex. App.—El Paso Aug. 25, 2023, no pet.) (mem. op., not designated for publication) ("[B]ecause the record does not support the factual predicate of her claim, we cannot say the trial court abused its discretion in denying her request for a mistrial during the guilt/innocence phase of trial."). This record does not reflect that any juror "engaged in such misconduct that the defendant did not receive a fair and impartial trial." *See* TEX. R. APP. P. 21.3(g). Accordingly, we conclude the trial court did not abuse

15

its discretion in denying appellant's request for mistrial based on the jury note. We overrule appellant's fourth issue.

## V. JUDGMENT MODIFICATION

By his fifth issue, appellant argues that the judgment does not reflect that his sentence for assault on a public servant is to run concurrently with his sentence for retaliation, rendering the judgment void. However, the Texas Court of Criminal Appeals has already expressly concluded otherwise. *See Ex parte Carter*, 521 S.W.3d 344, 347 (Tex. Crim. App. 2017). "An improper cumulation order may be remedied by reformation on appeal or, in the proper circumstance, a judgment *nunc pro tunc.* Because the improper cumulation order is subject to such remedies, the sentences cannot properly be declared void." *Id.* (internal citations omitted); *see also Schorre v. State*, No. 13-23-00142-CR, 2023 WL 7860784, at *1–2 (Tex. App.—Corpus Christi–Edinburg Nov. 16, 2023, no pet. h.) (mem. op., not designated for publication). (concluding modification of the judgment to show concurrence is permissible on appeal). An appellate court has the power to correct and reform the judgment of the court below to make the record speak the truth when it has the necessary data and information to do so, or make any appropriate order as the law and the nature of the case may require. *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Simmons v. State*, 672 S.W.3d 821, 829 (Tex. App.—Corpus Christi–Edinburg 2023, no pet.); *see* TEX. R. APP. P. 43.2(b) (permitting the intermediate courts of appeals to "modify the trial court's judgment and affirm it as modified").

The State agrees that the trial court orally ordered the sentences to run

16

concurrently when it sentenced appellant, and an oral pronouncement can be found in the record of the adjudication hearing. We therefore modify the judgment to reflect the sentences are to run concurrently. We overrule appellant's fifth issue.

## VI.   CONCLUSION

We affirm the trial court's judgment as modified.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
18th day of January, 2024.